(No. 13348.—Judgment modified and affirmed.)

SARAH J. THOMPSON, Plaintiff in Error, *vs.* JACOB L. CRAINS *et al.* Defendants in Error.

*Opinion filed October 23, 1920.*

1. CONSTRUCTION—*words of a statute should be given ordinary meaning.* In the construction of statutes words are to be given their ordinary meaning unless that meaning would make the statute absurd.

2. SAME—*fiscal year for tax purposes will not be construed different from calendar year unless intention is manifest.* A fiscal year for revenue or tax purposes will not be construed as different from the calendar year unless it clearly appears as the intention of the law that a year other than the calendar year is meant.

3. CONTRACTS—*an agreement to prorate taxes for current year construed.* The word "year" in section 8 of the Revenue act of 1898, (Hurd's Stat. 1917, p. 2482,) providing that the owner of property on the first day of April in any year shall be liable for the taxes of that year, means a calendar year, and where parties to a transfer of property agree to prorate the taxes for the current year the taxes should be prorated from January 1 and not from April 1.

4. TENDER—*objections to a tender should be made at the time of the tender.* The law interprets the conduct of the parties as to a tender according to their apparent intention and determines its sufficiency upon the objections then stated, silence being considered a waiver of objections; and where the only objection to a tender of the principal, interest and the amount of taxes agreed upon under a trust deed is that the amount is not sufficient, the party refusing the tender cannot afterwards make the objections that it was not in cash and was not made to the trustee.

5. SAME—*when a tender is sufficient to stop interest without bringing money into court.* Where a vendor refuses to accept a tender of the principal, interest and the amount of taxes agreed upon, claiming that the amount representing the taxes is not sufficient, the debtor will not be required to bring the money into court to make the tender good, and if his contention as to the correct amount is upheld in a foreclosure suit he will not be charged with interest after the tender, where the record shows that he has always been ready to pay said amount.

6. SAME—*when solicitor's fee should not be allowed.* Although a trust deed given to secure the purchase price of property con-

veyed provides for solicitor's fees if there is a default in the payments, such fees should not be allowed where foreclosure suit is brought by the vendor after he has refused to accept a correct tender of the principal, interest and taxes.

WRIT OF ERROR to the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

JOSEPH T. TYRRELL, and WALTER H. CHAMBERS, for plaintiff in error.

JACOB LEVY, and JOSIAH BURNHAM, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error filed a bill in the superior court of Cook county against defendants in error to foreclose a trust deed and for an accounting, alleging default in the payment of the principal note and certain interest coupons and declaring the entire mortgage indebtedness due. The matter was referred to a master in chancery to take evidence, and after a hearing on his report a decree was entered in favor of plaintiff in error, finding that the defendants in error should pay plaintiff in error $3681.03, with interest and costs. On appeal the Appellate Court reversed the decree and remanded the cause, with directions to dismiss the bill for want of equity at plaintiff in error's costs. The case has been brought here for further review on petition for *certiorari.*

The record shows that August 24, 1914, plaintiff in error, Sarah J. Thompson, and her husband, conveyed certain premises by warranty deed to defendant in error Jacob L. Crains. The deed expressed a consideration of $10, but the evidence tends to show that the consideration was really $19,000, of which $5000 was paid in cash. At the time of the sale there was an incumbrance of $10,000 on the prop-

erty, and the evidence tends to show that this was agreed to be assumed as part of the purchase price. The balance of $4000 was evidenced by four principal notes of $1000 each, due in six, twelve, eighteen and twenty-four months, with interest at six per cent per annum, and seven per cent if not paid when due, the interest installments being evidenced by coupons. These notes were all secured by a trust deed on the premises, payable at the office of Lavern W. Thompson, the trustee named in the trust deed. Thompson appears to be a nephew of plaintiff in error but not interested, except as trustee and possibly as attorney, in the result of this suit. A contract entered into previously with reference to this transaction provided that all the taxes levied after the year 1913 should be assumed by the purchaser. At the time the property was transferred it was orally agreed that the taxes for the year 1914 should be prorated when the amount was ascertained, which could not be done at that time as these taxes were payable in the early part of 1915. February 24, 1915, when the first note for $1000 and four interest coupon notes aggregating $120 came due, as the amount of the 1914 taxes was as yet unascertainable, it was agreed between the parties that these four interest notes should be held in abeyance until after the taxes were paid. Thereafter, in accordance with this understanding, the defendants in error paid these taxes, amounting to $226.93, and then discussed with plaintiff in error's representative the matter of prorating them. The defendants in error took the position that they were entitled to be credited with that proportion of the taxes represented by the time between January 1, 1914, and August 24, 1914, the date of the sale, while, on the other hand, plaintiff in error contended that credit should only be given on the basis of the period from April 1, 1914, to the date of the sale. This discussion was apparently held with the trustee, Thompson, who was acting as attorney for plaintiff in error, and he told the representative of defendants in error that there

was a difference of opinion as to which of the two methods should be followed in prorating, and he testified on this hearing that he suggested that they go and consult with the Chicago Title and Trust Company about the matter and follow the advice of the representative of that company as to the date from which the prorating should be reckoned, saying on that question, "I was not dead sure myself." The representative of defendants in error stated that he did not know that they would be willing to abide by the opinion of the Chicago Title and Trust Company but they would go and talk with the officers of that company. No agreement was made with reference to the date to be used in prorating. Nothing further was done about the matter before August 24, 1915, when another note of $1000 and three interest coupons came due. Jacob L. Crains (whom for convenience we will term the defendant in error) then tendered the amount due under the trust deed, less the deduction which he claimed should be allowed to him for the proportionate share of the taxes for 1914. This tender was made by the certified personal check of Crains and was indorsed in full of all demands up to and including August 24, 1915. Plaintiff in error refused to accept the check and on August 27 returned it with a letter stating, "It is our intention to commence foreclosure proceedings on this mortgage as soon as papers can be printed." A few days thereafter a bill was filed to foreclose the trust deed, alleging, among other things, that on account of default the complainant had elected to declare the entire indebtedness due, in accordance with the terms of the trust deed. Defendant in error filed a plea in that proceeding, setting up the tender and that he was still able and willing to pay, and offering to pay, the amount which should be found due by the court. After argument this plea was held good and a replication was filed and the matter went to a hearing before the chancellor. After the evidence had been introduced, plaintiff in error, apparently

thinking the case was going against her, on October 17, 1916, moved that the suit be dismissed, and an order was entered that "on motion of solicitor for complainant it is ordered that said suit be dismissed at complainant's motion and at complainant's costs." During that hearing defendant in error again tendered in open court the amount that he claimed was due, which was again refused. In the meantime the entire indebtedness had by its terms become due. Just after that suit was dismissed defendant in error asked plaintiff in error for a statement as to the amount due, which was furnished in a few days and which showed that plaintiff in error claimed the taxes should be prorated from April 1 instead of January 1, 1914. After receiving this statement, defendant in error on October 27, 1916, tendered plaintiff in error $3225 in cash, which was refused, and immediately thereafter, on the same day, he again tendered in cash to her $3275, which was likewise refused. The record tends to show that the only reason assigned for the refusal of the several tenders, including the one made by certified check, was, that the amount was not sufficient because the taxes for 1914 should be prorated from April 1 instead of January 1. About a month later plaintiff in error filed the present bill. Defendant in error answered, denying any default and setting up the tender of payment, and also alleging that the original deed to Crains from plaintiff in error warranted the premises to be free and clear of incumbrance, when, as a matter of fact, there was an incumbrance of $10,000 which the defendant in error was obliged to pay, and that this was largely in excess of plaintiff in error's demand, and that therefore the foreclosure should not be permitted until the incumbrance of $10,000 had been paid off by plaintiff in error. The answer also set up the prior bill and the dismissal thereof after hearing, and alleged that this dismissal was *res judicata.* The case was referred to a master in chancery, who found that the taxes should be prorated as claimed by defendant in error;

that the tender made on August 24, 1915, was the correct amount; that all the tenders made thereafter were sufficient and that the dismissal of the first suit was *res judicata.* Objections were filed by both parties, which were overruled and ordered to stand as exceptions before the chancellor. Some of the exceptions were sustained and some were overruled, the chancellor finding that the method of prorating the taxes from January 1 instead of April 1 was correct and that the tender made August 24, 1915, was therefore for the correct amount but that the tender had not been kept good, and that therefore that amount being overdue from the time of the tender drew interest at the rate of seven per cent, and that when the tender was made October 27 it was insufficient in amount, for the reason that it only included interest at six per cent instead of seven per cent. No solicitor's fees were allowed to plaintiff in error by the decree.

The first question presented regards the proper date for beginning in prorating the taxes for 1914, the oral agreement as to these taxes being that they should be prorated after the amount was ascertained.

Section 8 of the Revenue act of 1898 provides that the owner of property on the first day of April in any year shall be liable for the taxes of that year. (Hurd's Stat. 1917, p. 2482.) It is argued by counsel for plaintiff in error that the tax year, therefore, should run from April 1 until March 31 of the following year. Section 1 of the act on the construction of statutes (Hurd's Stat. 1917, p. 2845,) provides that in the consideration of all statutes the following rule, among others, shall be observed unless repugnant to the context of the statute: "Tenth, the word 'month' shall mean a calendar month, and the word 'year' a calendar year unless otherwise expressed; and the word 'year' alone, shall be equivalent to the expression 'year of our Lord.'" In the construction of statutes words are to be given their ordinary meaning unless that would make the

statute absurd or unmeaning. (*Chudnovski* v. *Eckels,* 232 Ill. 312; *Village of Depue* v. *Banschbach,* 273 id. 574.) Taxes are usually spoken of by public officials and those who have to deal with real estate with reference to a certain year, as "the year 1914" or "the year 1913." It is held in various cases that only when it appears to be the intention of the law itself will it be construed to mean a fiscal year for revenue or tax purposes different from the calendar year, and unless that purpose is clearly shown it is to be presumed that a calendar year is meant. (8 Words and Phrases, 7839; 4 id.—2d series,—1364.) Under these rules of construction it would seem that the word "year," as used in this agreement with reference to the payment of these taxes, would mean a calendar year.

It seems that the highest courts of other jurisdictions with reference to their particular statutes are not in full accord on this question. In *Hammett Co.* v. *Peates Co.* 217 Mass. 520, it was held that the year during which the liability for taxes accrued and the tax year began on May 1, and the reason for that holding was that, taken in connection with the subject matter concerning the assessment of taxes, that date was intended to be the beginning of such year. In *Pere Marquette Railroad Co.* v. *Kalamazoo, Lake Shore and Chicago Railway Co.* 158 Mich. 40, where a question of liability for tax arose where the railroad was required to list its property July 1, it was held with reference to the tax year that the calendar year instead of a fiscal year was intended. As it was stated in this last case so it might be stated here: "It is also significant that the taxes for one year are not payable until the first of the following year,"—that is, calendar year. The wording of the statutes of these two States was somewhat similar to the wording of the Illinois statute in this regard, but neither of the cases can be controlling here.

It may be noted in passing, although not controlling, that in 1917 the legislature amended section 292 of the

Revenue law, and the amended section provides that "the word 'year' when used in the act with reference to taxes of or for a year, shall mean a calendar year, beginning on the first day of January." (Laws of 1917, p. 658.) We think it is a fair construction of the statute before this amendment that the calendar year was meant instead of a fiscal year in prorating the taxes in this case, and that therefore the master, the chancellor and the Appellate Court rightly held that the date for beginning the prorating of taxes under this agreement should be January 1 and not April 1, 1914.

Counsel for plaintiff in error contend that the alleged tender of $1063.26 made on August 24, 1915, was not a legal tender, while counsel for defendant in error argue that this question was heard and tried in the first foreclosure suit, and therefore, as that suit was dismissed after the case had gone to a hearing, on motion of plaintiff in error, at complainant's costs, with no condition, it was not dismissed without prejudice; that the former suit is *res judicata* as to the tender of August 24 being a legal tender and sufficient in law. Counsel for both parties have argued this question at length, with the citation of numerous authorities, but in view of the conclusion we have reached that the tender was legal as made August 24, 1915, we deem it unnecessary to discuss the question of *res judicata.*

Under our holding heretofore made that defendant in error properly prorated the taxes of 1914 from January 1 instead of April 1, there can be no dispute but that the amount of the tender on August 24, as stated on the certified check, was sufficient to cover the amount then due; but it is argued here that the tender was not legal, both for the reason that it was by a certified check and not in cash and that the indorsement on the back stated that it was for a full release. The evidence in the entire record tends strongly to show that the only objection made to this tender at the time was that the amount was not sufficient, and that no question was raised as to its being by certified check or be-

cause of the indorsement. The law interprets the conduct of the parties as to a tender according to their apparent intention and determines its sufficiency upon the objections then stated, and silence is considered a tacit waiver of other objections. (1 Sutherland on Damages,—4th ed.—sec. 273; 26 R. C. L. 638; see, also, to the same effect, 28 Am. & Eng. Ency. of Law,—2d ed.—18, 19; and cases cited; *Gradle* v. *Warner,* 140 Ill. 123; 12 Ency. of Evidence, 487.) This same reasoning applies to the question whether or not the tender was properly made to the trustee instead of to the creditor herself. (1 Sutherland on Damages,—4th ed.— sec. 265.)

Counsel for plaintiff in error also argue that there is no proof in the record that the tender was kept good by defendant in error until the hearing in this proceeding, and that therefore the original tender, even if sufficient, would not stop the running of the interest,—and this was so held by the chancellor. "In equity it is seldom required that the tender be kept good, in the sense in which that term is used at law." (26 R. C. L. 647; *Board of Supervisors* v. *Henneberry,* 41 Ill. 179.) In the early case of *Webster* v. *French,* 11 Ill. 254, this court had occasion to discuss this question and said (p. 278): "The result of my examination of this subject clearly shows that the court of chancery is not bound down by any fixed rule on this subject, by which it will allow the substantial ends of justice to be perverted or defeated by the omission of an unimportant or useless act which nothing but the merest technicality could require. The money may at any time be ordered to be brought into court whenever the rights of the opposite party may require it, but while he is insisting that the money is not his and that he is not bound to accept it, it would seem to be a matter of no great consequence to him whether it is in the custody of the court or not. The court possesses a liberal and enlarged discretion on this subject, by the proper exercise of which the rights of all parties may be

protected." The doctrine in that case has been quoted many times with approval by this court and so far as we know has never been criticised in any particular. In *Glos* v. *Goodrich,* 175 Ill. 20, this court said (p. 23) : "A court of equity is not bound by any rule requiring the complainant to bring money into court in a case in which he may by a decree be required to pay money before a decree will be entered by the court. The money may be ordered into court at any time when the rights of the defendant require it, and the failure to produce it in court at the time of filing the bill, and constantly having it there, cannot be permitted to defeat the ends of justice and prevent the rendition of a decree,"—citing *Webster* v. *French, supra,* and other decisions of this court. Again, in *Glos* v. *Ambler,* 218 Ill. 269, we said (p. 273) : "The original tender was made to Glos in cash before the commencement of the suit. He refused to accept it. We have held that it is sufficient that the complainant make a tender to the defendant and allege in his bill that he is willing to pay whatever amount shall be found due to the holder of the tax deed upon the entering of a final decree, and that this is sufficient to place the defendant in the wrong and require him to pay the costs. [Citing authorities.] The complainant Furlong not only signified his willingness to pay the amount found upon rendition of the decree, but he tendered this amount before the suit was commenced and offered by his bill to pay the same at any time, also after the decree was rendered paid the money into court subject to the order of the appellants. This was sufficient to stop interest on the amount and also to render appellants liable for costs."

In the first foreclosure suit here defendant in error filed a plea after he had made the tender, saying that he was ready to bring the money into court on the order of court. The testimony on this hearing was to the effect that defendant in error told the trustee under the trust deed, after he had made his last tender of $3275, that "you can have

this whenever you want it," and there is no contradiction
of any kind that he was not ready, willing and able to carry
out that offer.    In *Gillespie* v. *Fulton Oil Co.* 236 Ill. 188,
this court said (p. 205) :    "Even if there had been no pay-
ment or tender of payment by appellant prior to the filing
of the bill in this case, the bill was filed in December, 1906,
before the second year expired, and in his bill appellant
tenders performance of all the conditions and covenants by
him to be performed, and avers that he is ready and will-
ing to go on in good faith and perform all of his covenants.
This is a sufficient tender in equity,"—citing authorities,
among others *Webster* v. *French, supra.*    This doctrine has
been cited with approval in many other jurisdictions.    See
among other cases, *Harris* v. *Greenleaf,* 117 Ky. 817 ; *Kline*
v. *Vogel,* 90 Mo. 239 ; *Cheney* v. *Libby,* 134 U. S. 68 ;
*Brock* v. *Hidy,* 13 Ohio St. 306 ; see, also, on the general
doctrine as to tender in equity and keeping it good, *Breiten-
bach* v. *Turner,* 18 Wis. 140 ; *Moynahan* v. *Moore,* 77 Am.
Dec. Ann. (Mich.) 468, and cases cited in note.

Counsel for plaintiff in error insist that on the ques-
tion of tender being kept good this court has held in *Aulger*
v. *Clay,* 109 Ill. 487, *Crain* v. *McGoon,* 86 id. 431, and
other cases, that the same rule applies both in law and equity
that the tender must be kept good and brought into court
in order to stop the payment of costs or the running of in-
terest.    We think counsel have drawn the wrong conclusion
from the reasoning in *Crain* v. *McGoon, supra,* and in quot-
ing in their briefs the holding in that opinion they have
not given the entire reasoning on the subject.    They quote
in their briefs from page 435 of the *Crain case* as follows :
"We think the preferable rule is, where the tender is made
after the day the debt secured by the mortgage is due, to
require that it shall be kept good in order that it may op-
erate to discharge the mortgage,"—citing authorities ; but
that opinion goes on to say : "It was Martin's duty, when
his tender was rejected, to have kept the money safely and

been ready to pay it when McGoon should consent to accept
it." This reasoning is in harmony with that of the Appel-
late Court in the decision of this case, that it would be in-
equitable and unjust to charge defendant in error seven per
cent interest after the maturity of the first payment, up to
and including the time of the last tender, in October, 1916,
in view of the evidence that the tender was made in Feb-
ruary and again during the hearing of the first foreclosure
suit and immediately thereafter, and after getting a state-
ment from plaintiff in error as to the amount due, and in
view of the testimony showing that the last tender was
more than sufficient to pay the entire indebtedness at that
time at the regular rate of six per cent rather than seven
per cent, which could only be collected if there was a de-
fault; also in view of the proof showing, without contra-
diction, that defendant in error told plaintiff in error's rep-
resentative at the time the last tender was made, that "you
can have this whenever you want it." This whole litiga-
tion was brought about by the mistaken claim, even if in
good faith, of plaintiff in error as to the division of the
taxes for 1914. This court cited with approval in *Webster*
v. *French, supra,* the case of *Washburn* v. *Dewey,* 17 Vt.
92, where the court said: "The excuses for not perform-
ing this contract are, if not frivolous, at least very unsat-
isfactory. The oratrix having tendered to the defendant the
money for the payment of the note, had nothing further to
do until the defendant manifested his willingness to com-
ply with his obligation and demanded the money. There is
no pretense, therefore, for saying the tender was not kept.
good." That reasoning applies with full force here. On
the facts as stated in this case there was never any good
reason for plaintiff in error or her agent refusing the tender
when made in August, 1915, or when made in open court
at the first hearing, or in October, 1916, in an amount
which, in view of our holding here as to the amount of
taxes due by prorating, was in excess of the amount due

to plaintiff in error with the regular rate of interest, six per cent.

Under the reasoning in the numerous decisions of this court based on *Webster* v. *French, supra,* we cannot hold, either in equity or by the weight of authority in this and other jurisdictions, that defendant in error should be required to bring the money into court or to prove further than shown by the record that the money was always ready to be paid to plaintiff in error at any time she demanded it. To hold otherwise on this record would be tantamount to holding that a court of equity would on the merest technicality defeat the ends of justice.

The Appellate Court rightly held that the first tender was sufficient and that therefore the plaintiff in error was not entitled to seven per cent interest on the unpaid installments at the time the last tender was made, in October, 1916, and that this last tender was also sufficient, on this record, to pay the entire indebtedness then due. Nothing, in our judgment, is said in any of the decisions relied on by counsel for plaintiff in error that would require a contrary conclusion. We have examined them all and do not deem it necessary to refer to them in detail.

Counsel for plaintiff in error also suggest that the superior court should have allowed solicitor's fees. The trust deed provided for solicitor's fees if there was a default in any of the payments. As we have held that there was no default it is not necessary for us to decide whether solicitor's fees should have been allowed, under all the circumstances of this case, if there had been default, and the chancellor rightly held that no solicitor's fees should be allowed.

The Appellate Court was right in reversing the decree of the superior court and in remanding the cause to that court. The direction to dismiss the bill, however, should have been conditioned upon the payment by defendant in error to plaintiff in error of the full amount of the prin-

cipal debt due October 27, 1916, when the last tender was made by defendant in error to plaintiff in error, together with the interest then due on said principal sum at six per cent per annum, after deducting the amount of the *pro rata* tax found by this opinion to be due from plaintiff in error. The judgment of the Appellate Court will be so modified, and as thus modified is affirmed.

*Judgment modified and affirmed.*