**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALUMINUM WORKERS INTERNATIONAL UNION, LOCAL NO. 135, AFL, Respondent.**

No. 11557.

United States Court of Appeals
Seventh Circuit.

March 2, 1956.

516

David P. Findling, Associate General Counsel, Frederick U. Reel, Attorney, N. L. R. B., Washington, D. C., Theophil C. Kammholz, General Counsel, Marcel Mallet-Prevost, Assistant General Counsel, Margaret M. Farmer, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Herbert S. Thatcher, Washington, D. C., for respondent.

Alex Elson, Chicago, Ill., Edward J. Hickey, Jr., Washington, D. C., Clarence M. Mulholland, Toledo, Ohio, Mulholland, Robie & Hickey, Washington, D. C., of counsel, for amici curiæ.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order finding that respondent had violated Section 8(b) (2) and (1) (A) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(b) (2), (1) (A), by causing the discharge of Leona Boness, and ordering respondent to cease and desist from causing or attempting to cause the Company[1] to discriminate against its employees and from restraining its employees in the exercise of their rights

---

1. Whenever this term appears herein, the reference is to the Metal Wares Corporation, the employer who is said to have discharged Boness discriminatorily at respondent's behest. No charges were filed against the Company.

guaranteed by the Act and to grant Boness certain mandatory relief.

The facts are not largely in dispute; the controversy is as to the legal consequences which spring from them. In 1952 respondent negotiated an agreement with the Company which provided, *inter alia*, for the recognition of respondent as exclusive bargaining agent for Company employees and for maintenance by all workmen of "membership in good standing" in the union as a condition of employment. In March 1953, in conjunction with a changed status in its international affiliation, respondent adopted a new constitution which altered the previously existing provisions for the payment of union dues by providing that, after the effective date of the new constitution, dues should be paid at a regular union meeting. By-laws adopted to implement the old constitution had provided, *inter alia* that members be considered delinquent after failure to pay dues for three months. A second by-law, modifying a constitutional provision that the fee for reinstating a suspended member be "not less than $15.00", had provided that such fee be $10.00. No new by-laws were adopted, but that of respondent's parent organization providing that "any member over two months in arrears shall stand suspended" was adopted at a regular union meeting on March 26, 1953.

At the time of her discharge, Boness had been an employee of the Company and a member of the union for more than three years. She did not attend the March 26 meeting and stated that she was unaware of the new two-month delinquency rule. She paid her dues for January, February and March in the latter month, following her customary practice of paying for each quarter during the last month thereof. She paid for the second quarter in May; she testified that normally this payment would have been made in June, but that she had some extra money in May and used it to get her

dues paid up. Under her customary three month practice, her next maturing dues would have been payable on or about September 10. Under the new two months rule, the date was August 14.

On August 10, respondent's financial secretary posted a list of names on the plant bulletin board headed "These members are two months in arrears." Boness' name was on the list, but the record does not show whether she saw the notice. On August 25, a strike occurred, which Boness refused to support. She and another employee continued working and crossed respondent's picket lines to enter the plant.[2] Because she had failed to respect the picket lines and participate in the strike, she decided not to attend the regular union meeting on September 10. On September 9, she purchased a money order in the amount of her dues for the third quarter and mailed it early enough to reach respondent before the meeting. On September 10, the order was returned to her by mail, with a note signed by respondent's financial secretary, which stated: "No union dues acceptable except at union meetings. The union intends to file charges against you for nonpayment of dues. We advise you to be present at tonight's meeting." She did not attend the meeting.

The strike was terminated on September 15. Shortly thereafter, Boness tendered the money order to respondent's financial secretary on the floor of the plant. It was not accepted.

On September 21, respondent asked the Company to notify several named employees, including Boness, that they were in arrears, and to give them a five-day grace period "to become in good standing," subject to discharge on their failure to do so. The Company replied that it understood that the named employees had paid their dues by mail and that respondent had refused to accept the payments; that some of these employees had turned their remittances into the Compa-

---

2. The experience of this second employee with the respondent closely parallels that of Boness, and she too was discharged at the Union's request. She filed no charges with the Board, and is not involved in this cause.

ny office, and that such sums were available to respondent. Thereafter, the union consulted its attorney and was advised that a tender by mail was good under the law and should be accepted.

Respondent then called a special meeting on September 24 to permit delinquent employees to tender their dues in person. Boness attended and tendered her money order. The offer was refused on the ground that she owed a $15.00 reinstatement fee and that dues were not acceptable unless accompanied by the added fee. She refused to pay the assessment. At the next meeting on October 8, Boness again tendered the money order for her third quarter dues together with a second order for those payable for the fourth quarter. Her tender was again refused because it was not accompanied by payment of the reinstatement assessment, which she again refused to pay.

On October 27, respondent, by letter, requested the Company to discharge Boness for nonpayment of dues. On November 4, the employer advised respondent that it would not discharge a delinquent employee except upon proof that such employee had been expelled by the Union. The following day, following conversations between attorneys for the Company and respondent, the employer advised Boness to pay the reinstatement fee and loaned her the money necessary for this purpose. On November 6, she purchased a money order in the amount of the reinstatement fee and mailed it to respondent, together with an explanatory note and the money orders for dues which she had previously tendered.

At its regular meeting on November 12, respondent expelled Boness. On the following day, the union president sought to return to her the envelope she had mailed to respondent on November 6 and the money orders which it contained. She refused to accept them and told the president to take them to the company office. On November 18, respondent notified the company that she, Boness, had been expelled and again demanded her discharge. Pursuant to this demand she was discharged on November 19.

In its original decision on February 1, 1955, the Board concluded that Boness made a proper tender of her dues on September 9 which was refused for a reason not related to the reinstatement fee; that by this refusal, respondent had waived whatever right it might have had to insist on the fee and that, by causing her discharge under the existing circumstances, respondent had violated § 8(b) (2) and (1) (a) of the Act. Upon reconsideration, the Board adhered to this view and concluded additionally that, even if payment of the reinstatement fee were a proper condition subsequent to Boness' good standing in the Union, she had satisfied the condition by her tender of the dues and reinstatement fee on November 7 before respondent had expelled her and before the company had acted on the demand for her discharge. If either of these determinations was correct, we must enforce the order.

Under § 8 (a) (3), an employer may not discharge an employee for nonmembership in a labor organization "if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee *to tender* the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership." Section 8 (b) (2) provides that it is an unfair labor practice for a labor organization "to cause * * * an employer to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure *to tender* the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership * * *." (Emphasis supplied in each quotation.)

■ Thus, the exception provided in the statute to effectuate a means for enforcement of maintenance of membership clauses has been drawn by Congress in terms of the established legal principle of tender. Since the word is not otherwise defined in the Act, we must accord to it its well established meaning. It is no objection that the doctrine was devel-

oped in the law governing business and commercial relationships. Such principles can be as easily and as logically applied to any situation requiring the payment of money by one person to another; we are bound by the language of the Act to accord to the word "tender" its well established legal connotation.

■ We think the Board correctly held that the September 9 tender was sufficient. Boness was notified by the notice posted in the plant that her dues were two months in arrears. Shortly thereafter, on September 9, she tendered the customary dues for the third quarter of 1952. This tender was refused because it was made by mail and not at "a union meeting." The tender was made to and refused by an officer empowered by respondent to collect dues, whose act was that of respondent. Boness was not then advised that she owed a reinstatement fee; there was no intimation that the amount of the tender was insufficient to discharge all her obligations to respondent. The reinstatement fee was not brought into the picture until several weeks later, after respondent had been advised by its attorney that its position in refusing the tender was untenable.

■■ Under these circumstances, the Board properly found that respondent had waived its right to demand a reinstatement fee. The rule is stated in 86 C.J.S., Tender, § 12, as follows: "Where * * * the tender is refused by the creditor on some ground other than that the amount is too small, * * * the tenderee waives the objection to the insufficiency of the amount." "It is the general rule that an objection to a tender on one ground is a waiver of all other objections which could have been made at that time." 52 Am.Jur., Tender, § 10. In Owens v. North State Life Ins. Co., 173 N.C. 373, 92 S.E. 168, an insurance company in defending an action on a policy of life insurance, asserted that the premiums had not been paid. It appeared, however, that the insured had given his promissory note to secure their payment; that, during his last illness and shortly after the maturity of the note, insured's wife tendered the face amount of the note in cash; that this sum did not include interest due under the terms of the contract and was, therefore, insufficient, and that the insurer refused the tender solely for the reason that "insured would have to wait till he got well and could come and see about it himself." In affirming a judgment against the company, the court said, 92 S.E. at page 169: " * * * when a tender is made, purporting to be the full amount, and there is an absolute refusal to accept on a specified ground that is untenable, the obligee is concluded, and will not be heard to allege other and different ground for his refusal." This rule is generally accepted by other courts. Thus, in Thompson v. Crains, 294 Ill. 270, 278, 128 N.E. 508, 511, 12 A.L.R. 931, the court stated: "The law interprets the conduct of the parties as to a tender according to their apparent intention and determines its sufficiency upon the objections then stated, and silence [as to other valid objections] is considered a tacit waiver of [such] objections." And in Bundy v. Wills, 88 Neb. 554, 130 N.W. 273, 274, it is said that " 'where a tender is refused without objection to the sufficiency of the amount, but on other grounds, the amount cannot afterwards be questioned.' " See also, Gradle v. Warner, 140 Ill. 123, 29 N.E. 1118; Moynahan v. Moore, 9 Mich. 9.

The principle announced by these authorities is applicable to the case before us. Nonpayment of dues is the one exception to the statutory provision forbidding discriminatory discharge of an employee. It has been stated that "the policy of the Act is to insulate employees' jobs from their organizational rights," Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. N.L.R.B., 347 U.S. 17, at page 40, 74 S.Ct. 323, at page 335, 98 L.Ed. 455, and "to prevent utilization of union security agreements except to compel payment of dues and initiation fees." Union Starch & Refining Co. v. N.L.R.B., 7 Cir., 186 F.2d 1008, 1012, 27 A.L.R.2d 629, certiorari

denied 342 U.S. 815, 72 S.Ct. 30, 96 L.Ed. 617; Radio Officers Union of Commercial Telegraphers Union, A.F.L. v. N.L.R.B., 347 U.S. at page 41, 74 S.Ct. at page 336. The record does not present the usual "free-rider" situation with which the discharge provisions of the Act were designed to cope. Boness' acts reveal a willingness to pay her way, with no evidence of delinquency prior to the inception of the present dispute. And in that controversy, the only conclusion justified by the record before us is that she was willing at all times to pay her own way and that she tendered her third quarter's dues promptly, in accord with her belief as to the due date. The whole record evinces her good faith throughout the controversy, and it was respondent's duty to accord to her a like good faith and either to accept the tendered dues or to advise her specifically of its requirements in that respect. Had respondent accepted the September 9 tender, it could not lawfully have demanded her discharge. And, assuming, arguendo, that respondent, at that time, might lawfully have demanded a reinstatement fee as a condition for Boness' continued employment, this right was waived, we think, when it refused her tender on a ground which was legally untenable. The record shows she acted in good faith, as we have stated, and although she subsequently refused to accede to respondent's demands for payment of a reinstatement fee, we cannot say that her position in this respect would have been the same had that fee been demanded when the September tender was refused or that she was not prejudiced by respondent's action. Indeed, several weeks elapsed after the tender before the fee was demanded and Boness may well have felt that her good standing had been destroyed merely because she had not appeared at the September 10 meeting and tendered her dues in person at that time. Furthermore, even if Boness be charged with knowledge that her dues were past due after two months had elapsed, she still could not determine, until a demand was made,

how much she owed by way of a reinstatement fee under a provision which stated merely that such a fee be "not less than $15.00."

We think, also, that the order is supported upon the second ground assigned by the Board on reconsideration. Assuming, without deciding, that, upon the circumstances of this case, Boness' continued employment might well be conditioned upon payment of the reinstatement fee, respondent's demand for her discharge was nevertheless a violation of the Act. When respondent first demanded Boness' discharge, the company interpreted its contract with the union as requiring expulsion as a condition for discharge for nonpayment of dues. Respondent's acquiescence in this interpretation is shown by its subsequent action in formally expelling Boness on November 12, and, thereafter, submitting a new demand for her discharge. In the meantime, on November 7, Boness tendered three money orders to respondent in an aggregate amount equalling her dues for the last six months of 1952 and the full reinstatement fee which respondent had demanded. Thus, prior to her expulsion and the operative demand for her discharge, she had tendered to respondent every cent it had demanded for reinstatement. This tender also was refused, and subsequently her expulsion was effected. Against this background of Boness' attempts to pay her way, respondent's action in demanding her discharge becomes the more suspect, and it would appear that "nonpayment of dues" was asserted as a lily-white front to cloak a demand for her discharge based on some other reason best known to respondent's officials.

We would, we think, subvert the policy of the Act were we to interpret this case as presenting the "free rider" situation which the discharge exceptions of § 8(a)(3) and (b)(1) were designed to meet. We have carefully considered all authorities cited by respondent and have concluded that they do not impinge upon the conclusions which we have reached. In

the view we take of this cause, we see no reason to consider other points advanced by the Board and by amicus curiae.

The order will be enforced.