**PRODUCERS TRANSPORT, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 135, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent.**

Nos. 12932, 12984.

United States Court of Appeals Seventh Circuit.

Nov. 29, 1960.

Robert P. Small, Small & Shaffer, Benton Harbor, Mich., for Producers Transport, Inc.

Edward J. Fillenwarth, Indianapolis, Ind. (Gregg, Fillion, Fillenwarth & Hughes, Indianapolis, Ind., of counsel), for respondent Union.

Stuart Rothman, Gen. Counsel, Allison W. Brown, Jr., Atty., Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Russell Specter, Washington D. C., for National Labor Relations Board.

Before SCHNACKENBERG and KNOCH, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

These are companion cases growing out of a consolidated proceeding before the National Labor Relations Board. In No. 12932, Producers Transport, Inc., hereinafter referred to as the Company, has filed a petition to review and set aside an order of the Board finding that the Company had violated section 8(a) (3) and (1) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 158(a) (1, 3), in discharging its employee, one Robert Pool. No. 12984 arises upon a petition by the Board for enforcement of its order against Local 135, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereinafter referred to as the Union, which was predicated upon a finding by the Board that the Union had violated Section 8(b) (2) and (1) (A) of the Act by causing the Company to discriminate against the said Robert Pool by discharging him from employment.

The Company is a common carrier engaged in transportation of goods in com-

merce. At all times pertinent to this litigation, the Union was the bargaining agent for the Company's employees, and, was a signatory with the Company of a collective bargaining agreement which contained a valid union shop and maintenance of membership clause.

Robert Pool was employed by the Company as a driver from and after November, 1953. Upon beginning employment with the Company and becoming a member of the Union, Pool executed a written checkoff authorization, authorizing the Company to deduct his Union dues from his paychecks upon the Union's request. Thereafter, dues were deducted from Pool's paychecks to and including those due for September, 1957.

The checkoff was made by the Company on the basis of a monthly checkoff list presented by the Union, on which was a notation beside each employee's name either of the amount to be deducted as dues or of the fact that the employee was not on checkoff. The lists submitted to the Company for September 1957,[1] and subsequent months contained a notation that Pool was not on checkoff. Thereafter, the Company made no deduction from Pool's wages for Union dues.

The Union's constitution and rules provided that a member was automatically suspended when he became 3 months in arrears in his dues payments. A member so suspended could obtain reinstatement by paying a $10.00 reinstatement fee and all back dues. Since Pool's dues were not deducted from his wages, and since he made no dues payments for October, November, and December, 1957, an entry was made on Pool's ledger card by the dues clerk of the Union on December 10 that he was suspended from the Union for non-payment of dues.

In the latter part of November, 1957, Pool asked the Union's shop steward how he could get back on checkoff. The stew-

ard stated that he would see about it, and thereafter, on January 2, 1958, discussed Pool's situation with the Union's business agent. The agent told the steward that he would find out what Pool owed and in the meantime the steward should collect a "couple of months anyhow." On January 4th, Pool gave the steward a check for $12.00. That check was delivered to the Union and credited by the dues clerk to payment of the $10.00 reinstatement fee and the balance was applied to dues.

In the meantime, Pool had not paid his January, 1958, dues, and the dues clerk, on January 10th, reported him more than 3 months delinquent. The president of the Union then sent word to Pool to come to the Union Hall and see him to straighten out the dues situation and take care of his reinstatement. Pool did not do so.

Thereafter, on January 15, 1958, written notice was given to the Company by the president of the Union that Pool had been suspended from the Union for nonpayment of dues and that the Union demanded his discharge in compliance with the Union security clause. Shortly thereafter the Company gave Pool written notice of discharge.

■ Congress, as an exception to the strict provision of the Act that it is unlawful to discharge an employee for nonmembership in a labor organization, has authorized an employer and a union representing a majority of his employees to enter into a union security agreement which makes union membership a condition of employment. In enforcing such a security agreement, a union may not cause the discharge of an employee for any reason other than his failure to tender the initiation fees and periodic dues uniformly required of members of the union. 29 U.S.C.A. § 158(b) (2); Radio Officers' Union v. N. L. R. B., 347 U.S. 17, 41, 74 S.Ct. 323, 98 L.Ed. 455. As we in-

---

1. Union dues of $6.00 per month were payable in advance. The checkoff list submitted to the Company by the Union in each month contained information as to dues to be deducted for each employee for the next succeeding month. Pool had been on vacation in August, 1957, and had been paid in advance. Since the Company was thus unable to deduct his dues for September from his August wages, $6.00 was deducted in September to satisfy the August checkoff request.

dicated in Union Starch & Refining Co. v. N. L. R. B., 7 Cir., 186 F.2d 1008, 1012–1013, 27 A.L.R.2d 629, a union may condition admission to membership in its organization upon any basis which it chooses, but it cannot enforce any such condition of membership other than the payment of dues by requiring the discharge of an employee.

The instant cases arise within the framework of those announced principles, and the issue as to the propriety of the Board's order in each must be judged by that standard.

### No. 12984

The ultimate issue presented in this proceeding is whether the Board properly found that the Union, in causing Pool's discharge by the Company, violated Section 8(b) (2) and (1) (A) of the Act.

The Board argues that Pool did tender his union dues in full. A subsisting tender is said to be found in the checkoff authorization. The terms of that authorization provided that it could only be revoked by written notice to both the Union and the Company. Since no written notice was given by Pool, the Board contends that Pool's checkoff authorization remained unrevoked and that the Union's failure to receive Pool's dues through that channel arose from the Union's removal of Pool's name from the checkoff list.

The undisputed evidence does not sustain the Board's position. In August or September, 1957, Pool advised an agent for the Company that he wanted off the checkoff and was told that he would have to go to the union hall to arrange it.[2] Pool denies that he went to the union hall for that purpose, but his name was removed by the Union from the checkoff list at the approximate time of his inquiry at the Company office. Pool knew from an entry on his check stubs that his dues were being deducted from his paychecks prior to September, 1957, and that, thereafter, the stubs showed that dues were not being deducted. Proof of Pool's knowledge is fortified by his testimony that he consulted his union steward in November, 1957, to see how he could get back on checkoff.

■ The Act is designed to prevent both employers and unions from discriminatorily discharging or causing the discharge of employees, but industrial stability requires that the employee too must assume some responsibility for his own conduct in the area of union dues payment. This record reveals Pool's actual knowledge that his dues were not being deducted from his paycheck. Although his removal from the checkoff was effected without written notice, Pool acquiesced in the lax procedure followed by the Union in that respect. The record reveals a total lack of understanding on the part of either Pool, the Company, or the Union that Pool's dues were being tendered as they became due and payable through the checkoff arrangement. Under those circumstances, the checkoff authorization cannot be legally construed as a continuing tender of dues.

■ The Board next contends that Pool tendered his dues to the Union irrespective of the stature of the checkoff as a tender.

In this context, Pool admitted that he never went to the union hall and tendered his monthly dues despite his knowledge that dues were not being deducted. After he had asked the shop steward about getting back on checkoff, the steward, on January 2, 1958, discussed the matter of Pool's dues delinquency with the Union's business agent. The business agent told the steward that, pending the time when he could determine what was due, the steward should collect a "couple of months anyhow." On January 4, 1958, Pool gave the steward a check for $12.00 which he marked with a notation "For Dues, November-December." That check was received by the Union and credited to Pool in the manner above indicated.

**2.** The reason given by Pool for wanting off the checkoff list was his belief that too much money had been deducted in the past. The record shows that that belief was mistaken and unfounded.

The Board now contends that the giving of that check was a tender of the back dues. We think that position is not supported by the record as a whole. Pool knew when the check was given that it was merely a partial payment on past dues and that it was yet necessary to determine the exact amount of the delinquency. Subsequent to the delivery of the check, but prior to the demand for discharge, Pool was notified by the president of the Union that he should come to the union hall to straighten out his dues situation and take care of his reinstatement in the Union. Pool did not do so, and the request for his discharge followed.

At best, the January 4th check was a tender of a payment upon a past due debt coupled with a statement of intention to tender the balance of the debt at some future time. That act was not legally sufficient to constitute a tender of his dues. Cf. Ortman v. Kane, 389 Ill. 613, 621, 60 N.E.2d 93. See generally 86 C. J.S. Tender § 1 et seq.

After he had received the discharge notice, Pool called the business agent of the Union and advised the agent that he would pay his back dues and reinstatement fees required by the Union. Pool was advised that he would have to come to the union hall and see the president of the Union to get the matter straightened out. Again, Pool refused to do so.

The Board asserts that the Union acted unlawfully in persisting in its discharge demand after receipt of that call. The statutory duty upon an employee with respect to the payment of dues is geared to the legal principle of tender. N. L. R. B. v. Aluminum Wkrs. Int. Union, 7 Cir., 230 F.2d 515, 518–519. Pool's call to the business agent did not constitute a "tender" in any legally accepted sense of that word, but was, at best, a belated offer to make at some future time a tender of dues which were already past due.

It has been held in N. L. R. B. v. Technicolor Motion Picture Corp., 9 Cir., 248 F.2d 348, and International Ass'n of Machinists v. N. L. R. B., 2 Cir., 247 F.2d

414, that a belated tender of dues, after a demand for discharge for dues delinquency has been made under a valid union security agreement, comes too late to be an effective bar to the Union's right to enforce the security agreement. See also, Cunningham v. Erie R. R. Co., 2 Cir., 266 F.2d 411, 416–417. If such belated tender is ineffective as a bar to the right of a union to demand the discharge of an employee for dues delinquency, the mere telephoned offer to make a tender at some future time is even less efficacious as a bar to a discharge.

The fact is that Pool was, at the time the check was delivered, delinquent in his dues payments for four consecutive months. He knew that the dues were not paid. Under the constitution and rules of the union he was automatically suspended from membership when his dues were delinquent for three months. Pool was advised on at least two occasions prior to the demand for his discharge that it was necessary for him to report to the union hall to get his dues situation straightened out. He failed to report. He must be charged with the foreseeable consequences that his continued failure to assume his fair share of the financial burden of the Union would lead to his suspension from the Union and might lead to his discharge from employment. Cf., Radio Officers Union v. N. L. R. B., 347 U.S. 17, 45, 74 S.Ct. 323, 98 L.Ed. 455.

As the Court said in N. L. R. B. v. Technicolor Motion Picture Corp., 9 Cir., 248 F.2d 348, 355, it is not conducive to healthy industrial relations to prevent unions from taking effective action to secure the prompt payment of dues where dues payments are required under a valid union security agreement. A necessary concomitant of such effective action by a union is the responsibility of the employee to see that his dues are paid promptly when due. We think it not unreasonable as a part of that employee responsibility to require him to tender his dues at the union hall where the dues records are kept. The Board's order in

this case absolves the employee from all responsibility and would permit him to defy the Union to collect his dues.

Finally, it is said that Pool was treated discriminatorily because the Union practice in the past had been to remove a driver from the work-call list for dues delinquency, but not to demand discharge. The argument upon that factor lacks validity upon this record, since the record does not reveal whether such past incidents had involved drivers who not only did not pay their dues, but, also, ignored union requests that they discuss the situation with the Union.

### No. 12932

Inasmuch as we have held in No. 12984 that the Union's demand for the discharge of Pool was legal, the Board's order against the Company must be set aside.

■ We think it pertinent to note, however, that we find no substantial evidence to support the Board's ultimate finding that the Company had any reasonable ground for believing that the Union request for Pool's discharge was based upon any reason other than his failure to tender the periodic dues. That finding was hung upon a statement by the Union's shop steward to the Company's terminal manager that he, the steward, had given the January 4th check to the Union's business agent. Compare, N. L. R. B. v. Die & Tool Makers, 7 Cir., 231 F.2d 298, certiorari denied 352 U.S. 833, 77 S.Ct. 50, 1 L.Ed.2d 53; N. L. R. B. v. Gottfried Baking Co., 2 Cir., 210 F.2d 772. If this Company, with knowledge that Pool was not on checkoff and with knowledge that the Union had several times requested that Pool come to the union hall to pay a dues delinquency, could not reasonably rely upon a written statement by the Union's president that Pool had been suspended for nonpayment of his dues, then no employer can ever honor a discharge request made under a union shop agreement without first auditing the union's dues records.

This record presents the simple case of a union member who sought to take a free ride and who processed an unfair labor practice charge when his effort was not successful. See N. L. R. B. v. Technicolor Motion Picture Corp., supra; Cunningham v. Erie R. R. Co., supra. In our opinion, the vigor and effectiveness of the Act is strengthened by recognition of Pool's unfair labor practice charge as such.

Enforcement of the Order against the Union is denied in No. 12984. The petition of the Company to set aside the Order is granted in No. 12932.