Vincent P. BRADY, Plaintiff,

v.

TRANS WORLD AIRLINES, INC., a corporation of the State of Delaware, and the International Association of Machinists, an unincorporated association, Defendants.

Civ. A. No. 1884.

United States District Court
D. Delaware.

Sept. 3, 1965.

John Biggs, III, of Bader & Biggs, Wilmington, Del., for plaintiff.

Robert H. Richards, Jr., of Richards, Layton & Finger, Wilmington, Del., Edward R. Neaher and Richard S. Harrell, of Chadbourne, Parke, Whiteside & Wolff, New York City, of counsel, for defendant, Trans World Airlines, Inc.

H. Albert Young and Bruce M. Stargatt, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., Edward J. Hickey, Jr., and James L. Highsaw, Jr., of Mulholland, Robie & Hickey, Washington, D. C., of counsel, for defendant, The International Ass'n of Machinists.

CALEB M. WRIGHT, Chief Judge.

The Court has found for plaintiff on the question of liability. See Brady v. Trans World Airlines, Inc., 223 F.Supp. 361 (D.Del.1963). The question of damages has been reserved. This opinion deals with damages.

The facts of this case are adequately set out in the opinion cited and will not be repeated. While that opinion concerned jurisdiction and the merits of Brady's claim, the Court concluded:

"For the guidance of the parties, plaintiff will be entitled to compensatory damages and reinstatement. The Court finds no barriers to this latter form of relief since it merely involves a mandatory injunction and that has been used in analogous situations by the Supreme

Court. Such relief is also supported by the Taft-Hartley analogy and seems necessary to effectuate the congressional policy fully." [1]

Thus the Court indicated prospectively that the elements of recovery which would be considered were reinstatement and compensatory damages. Subsequent argument concerning the damages recoverable by Brady and briefs directed to that question have not altered this conclusion.

■ ■ Brady must be reinstated in the same position he held before his discharge or in a substantially equivalent position. In determining whether a new position is substantially equivalent to the one previously held by Brady, such factors as seniority rights, fringe benefits, wages, hours, and security of position are to be considered. See CCH Labor Law Reports ¶4730. Furthermore, whether Brady is reinstated in the same position he held before discharge or in a substantially equivalent position, it should be kept in mind that he is entitled to the benefits he would have had *now* had he not been discharged and not just to the same job or one equivalent to it at the time of his discharge minus the benefits which have accrued to the position in the years since discharge.

■ The element of compensatory damages is somewhat more troublesome. Into this recovery plaintiff seeks to inject such items as back pay, damages for mental suffering arising from the humiliation and embarrassment caused Brady by his illegal discharge, damage to reputation, unforeseen expenses and punitive damages assessable against defendant IAM for willful and deliberate acts of discrimination. Further, Brady has recently moved to join his wife as an additional party plaintiff claiming damages for loss of consortium.

In addition to reinstatement the Court finds Brady entitled only to an award of back pay. Not only does the Court deem such recovery adequate to compensate Brady, but it is the sole recovery which is supported by the Taft-Hartley analogy relied upon by Congress in enacting 2 (Eleventh).[2] While other measures of recovery are not specifically denied to employees unlawfully discharged within the terms of Taft-Hartley, reinstatement and back pay are expressly provided in that Act.[3] This Court will not read into the provisions of the Railway Labor Act the full scope of common law tort and contract recovery without express congressional provision therefore and with the example of Taft-Hartley to the contrary.

■ In computing the amount due Brady as back pay, Brady's earnings since his discharge must be deducted from the amount he would have earned had he not been discharged.

Defendant IAM contends that Brady is entitled to no more than nominal damages because he failed to mitigate his damages by paying the $25 reinstatement fee demanded of him by the union. This fee, defendant points out, was only $8.75 more than the dues Brady owed. Because the amount required to achieve reinstatement was small, because Brady's refusal to pay was motivated by a spirit of "non-conforming eccentricity" and because, the reasonably prudent man would have sought reinstatement and *then* pursued his remedies, the argument goes, Brady's refusal to pay the $25 reinstatement fee amounts to failure to comply with the duty to mitigate damages.

The Court has upheld Brady's right to refuse to pay the reinstatement fee because he did not owe it. Judged by the defendant's own prudent man standard, Brady was justified in refusing to pay the $25 reinstatement fee.

1. Brady v. Trans World Airlines, Inc., 223 F.Supp. 361, 370 (D.Del.1963).

2. The Court previously pointed out that Congress was expressly aware of the relation of Taft-Hartley and the Railway Labor Act. See Brady v. Trans World Airlines, Inc., 223 F.Supp. 361 at 364–365 (D.Del.1963).

3. 29 U.S.C.A. § 160(c).

Section 14 of the IAM constitution reads:

"Sec. 14. Delinquency for 3 months in the payment of dues or assessments shall automatically cancel membership and all rights, privileges and benefits incident thereto. The period of good standing membership of members whose membership has been cancelled for delinquency, or other cause shall date from their last reinstatement, as shown by the G.L. records, and their rights, privileges and benefits under the provisions of this Constitution shall attach and date from their last reinstatement, as though they had never before held membership in the I.A.M." Section 14, Article E, Constitution IAM, effective April 1, 1954.

Thus, it would be reasonable for Brady to believe that if he paid the reinstatement fee, he might get his old job, but his seniority with its attendant benefits would date from the time of reinstatement. Whether or not this belief would be borne out after further resort to internal union remedies, the fear that his seniority would be lost was not unreasonable under the circumstances. Therefore the payment of $25 did not represent the opportunity which IAM supposes.

It should be noted, moreover, that IAM's illegal act was not in requesting an excessive sum from Brady but in causing TWA to discharge him because he would not pay it. Defendants' argument, therefore, compels one in Brady's position to anticipate illegal conduct and to comply with all of the defendants' demands lest the latter be tempted to violate a legal duty. It is little better than arguing that a person wounded by a robber may not sue for the full extent of his personal injuries because he would not have been shot had he turned over his wallet.

In any event, the evident congressional purpose would not be fulfilled by such a holding. Section 2 (Fourth), (Fifth), (Eleventh) represent a compromise under which employment may be conditioned upon compliance with union demands only to the extent of payment of uniform periodic dues. Demands going beyond this may not be enforced by causing the employer to exercise his economic power against the offending employee. Clearly, Congress desired to protect the employee's right to dissent and to disobey union instructions (or, indeed, to be moved by a spirit of "non-conforming eccentricity") without fear of reprisals involving the employment relationship. On the other hand, "free rides" are not possible because all members of the unit can be required to pay dues.

To hold that employees suing under 2 (Fourth), (Fifth), (Eleventh) may recover only the amount of the excessive sums demanded, however, would not effectuate that purpose. If that were the law, dissenting employees could be harassed by excessive demands for dues under the threat of discharge and their only remedy would be to hire a lawyer and sue for reimbursement. Congress might as well have legalized the closed shop as have enacted such a cynical and toothless provision. It should further be noted that the corresponding provisions of the Taft-Hartley Act have not been read so as to require mitigation.

Finally, the Court must consider plaintiff's motion to join Mrs. Brady as a party seeking damages for loss of consortium. Plaintiff concedes that Mrs. Brady's claim derives from that of her husband. "Mrs. Brady's claim is a claim for her pain and suffering which results derivatively from the pain and suffering suffered by her husband. If he has no claim, logically, she has no claim." [4]

The Court has found that Brady has no claim for damages for pain and suffering. Thus, Mrs. Brady has no claim. The motion to join her as a party plaintiff is denied. •

4. Letter memorandum of counsel for plaintiff dated October 26, 1964, p. 2.

In conclusion, the Court finds plaintiff entitled to reinstatement and back pay due to his illegal discharge from the defendant, TWA. See Brady v. Trans World Airlines, Inc., 223 F.Supp. 361 (D. Del.1963). The incidents of said reinstatement and back pay are outlined above.

Present order.