Vincent P. BRADY

v.

TRANS WORLD AIRLINES, INC., and
the International Association of
Machinists,
Vincent P. Brady, Appellant in No. 16266,
Trans World Airlines, Inc., Appellant in
No. 16267,
The International Association of Machin·
ists, Appellant in No. 16268.

Nos. 16266–16268.

United States Court of Appeals
Third Circuit.

Argued Sept. 26, 1967.

Decided Aug. 13, 1968.

Certiorari Denied Jan. 20, 1969.

See 89 S.Ct. 680, 681, 684.

Harold L. Warner, Jr., Chadbourne, Parke, Whiteside & Wolff, New York City, for Trans World Airlines, Inc. (Charles F. Richards, Jr., Richards, Layton & Finger, Wilmington, Del., Edward R. Neaher, Richard S. Harrell, New York City, on the brief).

Francis L. White, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for Vincent P. Brady.

Before HASTIE, Chief Judge, and McLAUGHLIN and FORMAN, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

This litigation, protracted over more than eleven years, concerns the suit brought by Vincent P. Brady against his union, The International Association of Machinists (IAM),[1] for breach of its duty of fair representation, and his employer, Trans World Airlines, Inc. (TWA), for wrongful discharge violative of the Railway Labor Act.[2] In an order filed November 4, 1963, the United States District Court of the District of Delaware found against TWA and IAM on the issue of liability. By its order filed September 6, 1966, Mr. Brady was awarded damages by way of back pay and reinstatement in both his former employment and in his union membership. From these and previous orders TWA [2a] and IAM [2b] appealed. Mr. Brady has cross-appealed maintaining that the District Court err-

James Highsaw, Jr., Mulhoulland, Hickey & Lyman, Washington, D. C., for International Assn. of Machinists. (Bruce M. Stargatt, Wilmington, Del., Edward J. Hickey, Jr., Washington, D. C., Young, Conaway, Stargatt & Taylor, Wilmington, Del., on the brief).

---

1. The present name of this organization is International Association of Machinists and Aerospace Workers.

2. 45 U.S.C. § 151 et seq.

2a. TWA noticed its appeal from the "final judgment entered * * * on September 6, 1966 * * * except so much as provides 'that plaintiff's application to join as a party-plaintiff plaintiff's wife be and the same is denied' and from each and every other order entered herein which entered into the making of said final judgment."

2b. IAM noticed its appeal from the following:

"(1) The portion of the order of November 12, 1959, denying defendants' motions to dismiss the second amended complaint and to strike certain portions thereof;

"(2) The portion of the order of August 4, 1961, denying defendants' motions for summary judgment;

"(3) The order of November 4, 1963, holding defendants to be liable to the plaintiff;

"(4) Paragraphs one through six of the order of September 6, 1966, awarding damages to the plaintiff."

ed, among other things, in so far as it limited the recoverable damages.[2c]

The complicated factual background of this case has been amply set forth in the several opinions of the District Court.[3] Therefore the particular facts will be adverted to herein only as they are necessary for a general understanding of the several issues raised in these appeals.

In 1951, Mr. Brady, who was previously employed by TWA, was rehired as a line mechanic and worked at the Philadelphia International Airport until May 15, 1956, the date of the alleged wrongful discharge. During this period he was a member of Local Lodge 1776 of IAM. In October 1955, a campaign was begun to raise the membership dues of Local 1776. At the November 1955 meeting the lodge members voted to raise the dues for persons in Mr. Brady's classification from $3.00 to $3.25 per month. Many members of the lodge who like Mr. Brady, had not been present, complained to him, as a shop steward, about the dues increase because they had not received sufficient notice of the time and place of the November meeting. At the December meeting, the members adopted Mr. Brady's motion that the prior dues increase be rescinded; that the issue be brought before the next general membership meeting after the posting of due notices. Nevertheless, notices were not posted and

the general membership meeting was not held in January.[4] In protest to what he considered to be an illegal dues increase, Mr. Brady refused to pay his monthly dues at the new rate. Frequently thereafter he tendered his dues at the old rate and since these tenders were always rejected the record indicates that his last dues payment was for November 1955.

In January 1956, Gerald C. Coleman became the financial secretary of Local Lodge 1776. Shortly after assuming his office, Mr. Coleman began a program to collect all back dues from members of the lodge. On February 15, 1956, he posted a list of the nine members who on that date still owed dues for two or more months. Mr. Brady was then listed as owing dues for December and January. This posted notice threatened the nine members with action from the district office unless the dues were paid within ten days. At the end of this ten day period, of those listed, only Mr. Brady, who continued to tender dues at the $3.00 rate, remained delinquent.

On March 3, 1956, Mr. Coleman cited Mr. Brady to Clifford Miller, General Chairman of District 142, which had jurisdiction over Local Lodge 1776, for his dues delinquency and sought discharge action. Mr. Brady received a letter dated March 13, 1956, from Mr. Miller advising him that he had not complied with the

---

**2c.** In his notice of appeal, as amended, Mr. Brady particularized the denial by the District Court of
  (1) His demand for a jury trial
  (2) His applications for
    (a) punitive damages
    (b) attorneys' fees and costs
    (c) the value of free passes available to employees of TWA and
    (d) leave to join his wife as a party plaintiff.

**3.** 156 F.Supp. 82 (D.Del.1957); 167 F.Supp. 469 (1958); 174 F.Supp. 360 (1959); 196 F.Supp. 504 (1961); 223 F.Supp. 361 (1963); 244 F.Supp. 820 (1965); Civil No. 1884 (D.Del., filed September 6, 1966). The first of these citations reports the opinion of the late Chief Judge Paul Leahy who retired after its filing. The other citations refer to opinions by Chief Judge Caleb M. Wright.

**4.** A special meeting was held in January 1956, but no mention was made of the dues question. When the dues matter was again handled at the February meeting in a manner unsatisfactory to him, Mr. Brady wrote a letter to A. J. Hayes, International President of the IAM, and Eric Peterson, Financial Secretary of the Grand Lodge, describing and protesting as illegal the manner in which the dues for Local Lodge 1776 had been increased. In his letter Mr. Brady enclosed his dues book and a check for three months dues at the old rate and stated that he would reimburse the lodge if future actions showed that his tender was insufficient. On February 17, 1956, Mr. Brady received a letter from Mr. Hayes which stated that the dues increase "was handled properly."

union security provisions of the TWA-IAM collective bargaining agreement and that unless he paid outstanding dues for four months including those of March, by March 28, he would be discharged from his employment by TWA. In response to this letter, on March 27, 1956, Mr. Brady tendered his dues book and a check for $10.50 to Mr. Coleman.[5] On instructions from Mr. Miller, Mr. Coleman wrote Mr. Brady on March 28 rejecting his tender as insufficient. For the first time, he demanded payment by April 4 of a $25.00 reinstatement fee, allegedly due pursuant to the IAM Constitution, and $9.75 for three months dues.

Mr. Brady feared that if he paid a reinstatement fee he would lose the five year seniority that he had accumulated with TWA. On April 3, 1956, Mr. Brady filed his first appeal with the TWA-IAM System Board of Adjustment (Board). On April 7, 1956, Mr. Coleman wrote to Mr. Miller advising him of Mr. Brady's failure to make payment as demanded. Mr. Miller, on April 9, 1956 certified to TWA that Mr. Brady should be discharged for violating the union security provision of the collective bargaining agreement. On April 10, TWA notified Mr. Brady of this certification.

At this point, Mr. Miller realized that Mr. Coleman had misunderstood the instruction given him and had mistakenly demanded in the letter of March 28, 1956, both a reinstatement fee and outstanding dues. Mr. Miller immediately cancelled Mr. Brady's discharge certification and on April 11, wrote to Mr. Brady explaining Mr. Coleman's error and demanding only payment of the $25.00 reinstatement fee by April 26. Mr. Brady answered Mr. Miller's letter by offering to pay all dues outstanding but requesting that he should be permitted to forego the reinstatement fee. Mr. Miller rejected this offer and again demanded the reinstatement fee. On April 24, Mr. Brady filed his second appeal to the Board arguing that he had not violated the union security provisions of the collective bargaining agreement. This appeal was dismissed at a hearing on May 4 as premature since it had been filed prior to May 1, 1956, the date of a second certification for discharge which Mr. Miller had sent to TWA. On May 5, 1956, Mr. Brady made a third appeal to the Board protesting the May 1 certification. A hearing was held on May 14,[6] and the Board ruled that the discharge was proper under the union security provisions of the collective bargaining agreement. Accordingly, Mr. Brady was discharged from his employment by TWA effective May 15, 1956.

After unsuccessfully seeking a rehearing by the Board, on the charge that Mr. Miller had misrepresented facts at the hearings of May 4 and May 14, Mr. Brady, on April 22, 1957, filed a complaint in the District Court charging IAM with hostile discrimination in breach of its duty of fair representation and TWA with wrongful discharge in violation of the Railway Labor Act. Mr. Brady sought relief against IAM and TWA by way of reinstatement in the union and in his employment together with compensatory and punitive damages.

I

At the outset, both IAM and TWA challenge the subject matter jurisdiction of the District Court. They submit that pursuant to section 204 of the Railway Labor Act,[7] Article XII of the TWA-IAM collective bargaining agreement established a System Board of Adjustment to adjust and decide disputes or grievances arising out of the interpretation and application of the agreement. Paragraph (k) of Article XII provides that decisions

---

5. Mr. Brady believed the dues increase for persons of his classification was fifty cents rather than twenty-five cents, so his check was intended to cover three months dues at the increased rate.

6. Mr. Brady did not attend the hearings of May 4 and May 14, held in Kansas City, Missouri, because, as he said in his letter to the Board, he believed the Board had before it all the necessary factual documents to substantiate his position.

7. 45 U.S.C. § 184. The Railway Labor Act was made applicable to "carriers by air" in 1936. 45 U.S.C. § 181 et seq.

of the Board in cases properly before it shall be final and binding on the parties. Article XXVI(f), one of the union security provisions, gives an employee the right to appeal his discharge to the Board. Several cases are cited which uphold the finality of adjustment board decisions and circumscribe their reviewability by the courts.[8]

Focusing on these contractual provisions, it is argued that Mr. Brady elected to appeal to the Board, that hearings were held by that body on May 4 and May 14, 1956, and that Mr. Brady's discharge was determined to be proper under the collective bargaining agreement. Having elected to take this appeal to the Board, the assertion is made that its adverse decision is final and binding on Mr. Brady and that the courts may not review the merits of that decision. This argument, which seeks to sustain the Board's ruling, and to foreclose judicial review of the dispute was properly rejected by the District Court.

The complaint in this case, as amended, charges IAM, which throughout the period in question was the plaintiff's exclusive bargaining agent, with hostile discrimination in refusing to accept tender of Mr. Brady's dues because of claimed delinquency, terminating his union membership and wrongfully citing him for discharge from his employment with TWA, actions which, it is alleged, IAM did not take against other members of Local Lodge 1776 who were said to be delinquent in the payment of their dues. Furthermore, IAM is charged with hostile discrimination in misrepresenting the facts pertaining to Mr. Brady's alleged dues delinquency at the hearings before the Board. These allegations make it clear, as the District Court noted, that plaintiff's controversy is primarily with

his bargaining agent rather than his employer.

The propriety of disregarding the ruling of the Board is justified by an examination of the Board's statutory jurisdiction. Section 204 of the Railway Labor Act [9] authorizes the establishment of air carrier adjustment boards and sets forth their jurisdiction as follows:

"The disputes between an employee or group of employees and a carrier or carriers by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * * may be referred by petition of the parties or by either party to an appropriate adjustment board, * * *."

Subsequent language of this section limits the jurisdiction of air carrier adjustment boards to that granted to railway carrier adjustment boards as provided in section 3 of the Railway Labor Act.[10] The jurisdiction of railway carrier adjustment boards has been construed as encompassing disputes between employees and their employers, but not disputes between employees and their bargaining representatives. In Conley v. Gibson,[11] union members brought a suit against their bargaining agent for breach of its duty of fair representation. Their complaint was dismissed on the ground that the adjustment board had exclusive jurisdiction over the controversy. The Supreme Court reversed, stating:

"But § 3 First (i) by its own terms applies only to 'disputes between an employee or group of employees and a carrier or carriers.' This case involves no dispute between employee and employer but to the contrary is a suit by employees against the bargaining

---

8. See, e.g., Gunther v. San Diego A.E. Ry., 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965); International Ass'n of Machinists, etc. v. Central Airlines, 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963); Bower v. Eastern Airlines, 214 F.2d 623 (3 Cir.), cert. denied, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685 (1954).

9. 45 U.S.C. § 184.

10. 45 U.S.C. § 153.

11. 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

agent to enforce their statutory right not to be unfairly discriminated against by it in bargaining. The Adjustment Board has no power under § 3 First (i) or any other provision of the Act to protect them from such discrimination." [12]

■ The District Court, relying on *Conley,* correctly ruled that since the Board was without jurisdiction to hear Mr. Brady's claim, which essentially charges IAM with hostile discrimination, the Board's decision could not bar judicial review of the merits of that controversy. That the employer was joined to afford complete relief and that the dispute may incidentally involve construction or interpretation of the collective bargaining agreement does not change the basic fact that the Railway Labor Act does not authorize adjustment boards to hear an employee's dispute against his union.

There is good reason for denying the jurisdictional authority of adjustment boards in so far as controversies between employees and their bargaining representatives are concerned. The membership of such boards is designed to give representation to management and to the union.[13] Normally the board's composition would present no problem since its express statutory authority is to hear grievances between employees and their employers arising out of the collective bargaining agreement. In such a dispute the employee would expect his union, acting under its duty to prosecute fairly the grievances of its members, to represent him before the board. This scheme, however, overlooks the possibility that the union's interest might conflict with the

employee's and this is especially so in cases where the employee is charging the union with hostile discrimination. In such circumstances, the union can hardly be expected to press the employee's claim vigorously and forthrightly. The District Court's statement on this point bears reiteration:

"It is simply repugnant to our standards of fundamental fairness and totally unrealistic to require an employee to submit a dispute he has with his bargaining agent for final determination to persons selected by and representing the bargaining agent." [14]

The decision of this court in Bower v. Eastern Airlines [15] is relied on by IAM and TWA as requiring a recognition of the Board's ruling as final and binding upon the parties. In that case, Bower, having been discharged from his employment, appealed to the board charging his employer with wrongful discharge. The board sustained the discharge and Bower then reasserted the same claim in the District Court. This court held that the employee, having elected the administrative remedy in seeking settlement of a dispute concerning his employment could not obtain a judicial reexamination of the merits of the dispute. But the court went on to say: "This does not foreclose the consideration of questions of jurisdiction or of the essential fairness of the administrative proceedings, even when these issues are raised collaterally." [16] The situation presented by the present case seems to come squarely within the caveat of *Bower.* Moreover, it is significant that in *Bower,* and like cases advanced

12. Id. at 44–45, 78 S.Ct. at 101. See Rumbaugh v. Winifrede R.R., 331 F.2d 530 (4 Cir.), cert. denied, 379 U.S. 929, 85 S.Ct. 322, 13 L.Ed.2d 341 (1964); Cunningham v. Erie R.R., 266 F.2d 411 (2 Cir. 1959); Wade v. Southern Pacific Co., 243 F.Supp. 307 (S.D.Texas 1965); Nobile v. Woodward, 200 F.Supp. 785 (E.D.Pa.1962).

13. Article XII(b) of the TWA-IAM collective bargaining agreement provides:

"The System Board of Adjustment shall consist of four (4) members, two (2) selected by the Company and two (2) selected by the Union."

14. 167 F.Supp. at 472.

15. 214 F.2d 623 (3 Cir.), cert. denied, 348 U.S. 871, 75 S.Ct. 107, 99 L.Ed. 685 (1954).

16. Id. at 626.

94

with it, employees sought relief against their employers and not their unions.[17]

The conclusion that because the Board lacked jurisdiction to hear the dispute its decision does not preclude an independent judicial review of the controversy, of course, does not itself establish the District Court's jurisdiction. Here, the District Court, however, properly found that Mr. Brady had pleaded causes of action invoking federal jurisdiction under 28 U.S.C. §§ 1331, 1337.

■ It is now well established that an exclusive bargaining agent has a fiduciary obligation imposed by federal law to fairly represent all those employees in the bargaining unit in the negotiation, administration, and enforcement of collective bargaining agreements.[18] The federal courts have subject matter jurisdiction to enforce this statutory duty of fair representation which imposes on the union an obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.[19] Although this duty imposed on the bargaining agent was originally restricted to the prevention of hostile discrimination based on racial prejudice,[20] it is now recognized that the statutory power conferred on unions imposes on them a corresponding duty which encompasses the prohibition of all forms of hostile discrimination.[21]

■ Mr. Brady sets forth in his complaint, as amended, allegations of "wilfull and deliberate" discrimination by the IAM, such as the arbitrary invocation of union security provisions which caused him to be discharged from his employment by TWA. These allegations clearly constituted a claim against IAM cognizable in the District Court. The assertion of TWA that the court lacks jurisdiction over the employer in such a suit has been clearly answered by the Court of Appeals for the Second Circuit in Cunningham v. Erie R.R.[22] In that case, which is strikingly similar to the instant case, the court stated:

"If the District Court has jurisdiction to proceed against the union it is clear, we think, that it has also power to adjudicate the claim against the rail-

17. Gunther v. San Diego & A.E. Ry., 382 U.S. 257, 86 S.Ct. 368 (1965); International Association of Machinists, etc., v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956 (1963); Elgin, J.&E. Ry. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945) (involved authority of union to exclusively represent employees before the National Railroad Adjustment Board and to settle their contract claims against employer.); Finlin v. Pennsylvania R.R., 288 F.2d 826 (3 Cir. 1961); Woolley v. Eastern Air Lines, 250 F.2d 86 (5 Cir. 1957), cert. denied, 356 U.S. 931, 78 S.Ct. 773, 2 L.Ed.2d 761 (1958); Sigfred v. Pan American World Airways, 230 F.2d 13 (5 Cir.), cert. denied, 351 U.S. 925, 76 S.Ct. 782, 100 L.Ed. 1455 (1956).

18. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Elgin, J.&E. Ry. v. Burley, 325 U.S. 711, 65 S.Ct. 1282 (1945); Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); Steele v. Louisville & Nashville R.R., 323 U.S. 192, 65 S.Ct. 226, 89 L. Ed. 173 (1944).

19. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681 (1953).

20. Steele v. Louisville & Nashville R.R., 323 U.S. 192, 65 S.Ct. 226 (1944); Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235 (1944); Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283 (1952).

21. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903 (1967); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S. Ct. 681 (1953); Rumbaugh v. Winifrede R.R., 331 F.2d 530 (4 Cir.), cert. denied, 379 U.S. 929, 85 S.Ct. 322 (1964); Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191 (4 Cir. 1963); Cunningham v. Erie R.R., 266 F.2d 411 (2 Cir. 1959); Nobile v. Woodward, 200 F. Supp. 785 (E.D.Pa.1962).

22. 266 F.2d 411 (2 Cir. 1959).

road. It would be absurd to require this closely integrated dispute to be cut up into segments." [23]

■ Apart from the foregoing, Mr. Brady has stated other grounds which validly invoke the jurisdiction of the District Court against both IAM and TWA. He charges both defendants with causing his discharge in violation of section 2 (Eleventh) of the Railway Labor Act [24] which, in part, provides:

"Eleventh. Notwithstanding any other provisions of this chapter, * * * any carrier or carriers * * * and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted—

"(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: *Provided,* That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership."

There is no need to repeat the District Court's lengthy and careful analysis of this provision, its intended purposes and its effect on the court's jurisdiction of the present case. In sum, the District Court reasoned that section 2 (Eleventh), which permits union shop agreements within prescribed limits, was intended as a proviso to section 2 (Fourth) (Fifth), which prohibited all employer conduct designed to influence or coerce employees to join or maintain membership in a labor organization.[25] In so analyzing the Railway Labor Act the District Court considered Mr. Brady's complaint as alleging that his discharge was not protected by the exception to prohibited employer conduct (section 2 (Eleventh)) and because his discharge was designed "to influence or coerce employees in an effort to induce them to join or remain * * * members of [a] labor organization",[26] it violated the anti-discrimination provisions of section 2 (Fourth). The District Court further reasoned that since the court's jurisdiction over complaints alleging violations of section 2 (Fourth) was clearly established, that jurisdiction should encompass suits involving section 2 (Eleventh), the proviso to section 2 (Fourth).[27]

It is the contention of TWA and IAM that this case involves the interpretation and application of the union security provisions of the collective bargaining agreement and, therefore, the adjustment board has exclusive jurisdiction. This argument, which assumes that public statutory rights, when incorporated in a

23. Id. at 416. The policy of preventing the fragmentation of the controversy and adjudicating the entire matter in a single forum to assure complete relief was followed in Rumbaugh v. Winifrede R.R., 331 F.2d 530 (4 Cir. 1964); Wade v. Southern Pacific Co., 243 F.Supp. 307 (S.D.Texas 1965); Nobile v. Woodward, 200 F.Supp. 785 (E.D.Pa.1962).

24. 45 U.S.C. § 152 (Eleventh). Hereafter paragraphs of 45 U.S.C. § 152 will be designated simply by their place in section 2 of the Railway Labor Act.

25. 223 F.Supp. at 364–365.

26. 45 U.S.C. § 152 (Fourth).

27. 223 F.Supp. at 365. The District Court recognized an exception to this rule (196 F.Supp. at 507 n. 11). Suits involving section 2 (Eleventh) (c) were specifically left to a special board rather than the courts. See 45 U.S.C. § 153(f); Pennsylvania R.R. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480 (1957).

collective bargaining agreement, become exclusively private contract rights, is a reiteration of the same argument that was rejected by the District Court. Under the view expressed by TWA and IAM, an employee who seeks to regain his job after being discharged for alleged non-payment of dues is required to appeal to the adjustment board, which consists of an equal number of representatives of the employer and the union.[28] By permitting a limited form of union shop in section 2 (Eleventh), Congress intended to relax the anti-discrimination provisions of section 2 (Fourth) (Fifth).[29] In so relaxing them, it did not intend an appeal to the adjustment board as the sole recourse for an employee seeking reinstatement in his employment after being discharged for alleged non-payment of his union dues. Otherwise, in such a dispute, which pits an employee against his union and his employer, the very parties whose power he challenged, would have the additional power of deciding whether they had exercised it in a proper manner. The District Court properly concluded that "if application and interpretation of 2 (Eleventh) is the sole province of Adjustment Boards, then Congress did not 'relax' the prohibitions of 2 (Fourth) (Fifth) by enacting 2 (Eleventh); it repealed them."[30]

The jurisdiction of the District Court over the subject matter of this suit was well founded in view of the allegations in the complaint as amended of hostile discrimination and of violations of Mr. Brady's rights under section 2 (Fourth) (Eleventh) of the Railway Labor Act.[31]

## II

The suit was heard by the District Judge without a jury[32] first on the issue of liability[33] and later on the question of damages.[34] He construed the complaint as raising alternative grounds for relief —a claim for hostile discrimination in breach of the bargaining agent's duty of fair representation, and a claim for wrongful discharge in violation of section 2 (Fourth) (Eleventh) of the Railway Labor Act. After the hearing on liability, the District Court ruled that because Mr. Brady had proven facts sufficient to support recovery on the second claim, it would not make findings on the hostile discrimination claim.

The District Court found that under the union security provisions of the TWA-IAM collective bargaining agreement, an employee, in order to continue his employment, was required to maintain membership in good standing in the union by paying his monthly dues not later than the last day of the following calendar month.[35] Under this standard, the

28. See note 13, supra.

29. S.Rep.No. 2262, 81st Cong.2d Sess. 1950; U.S.Code Congressional Service News, Vol. II, p. 4320.

30. 223 F.Supp. at 366.

31. In the opinion reported at 174 F.Supp. 360, 365, the District Court raises sua sponte a third source of federal court jurisdiction, namely, the validity of the union security provisions of the collective bargaining agreement in light of 45 U.S.C. § 152 (Eleventh) (a). In view of the disposition of this case, it is not necessary to consider this further jurisdictional basis.

32. In an earlier opinion, reported at 196 F. Supp. 504, the District Court ruled that Mr. Brady was not entitled to have the action tried to a jury because the main relief he sought, reinstatement, was equitable, the other requests for monetary compensation such as back pay being incidental. Secondarily, it was held that the statutes relied upon do not embrace actions at common law and are thus outside the scope of the Seventh Amendment.

33. 223 F.Supp. 361.

34. 244 F.Supp. 820.

35. Article XXVI of the TWA-IAM collective bargaining agreement provides in pertinent part:

"(a) Each employee now or hereafter employed in any work covered by this Agreement shall, as a condition of continued employment in such work, within sixty (60) days following the beginning of such employment or the effective date of this Article, whichever is later, become a member of, and thereafter maintain membership in good standing (as herein defined), in the Union, except as provided otherwise herein. Such

December dues were payable by the end of January, those for January by the end of February and those for February by March 31. The District Court ruled that IAM's March 13 demand for four months dues by March 28 was clearly excessive since Mr. Brady was then only in arrears for two months, or $6.50. Thus, when Mr. Brady responded to the letter of March 13 by sending his dues book with $10.50 to the financial secretary of the local lodge, his tender was more than sufficient to pay his two months' arrearage,[36] and being valid, it precluded his discharge. Nor was any change wrought in the situation when IAM, by its letter of March 28 to Mr. Brady, rejected his tender as insufficient to cover three months dues of $9.75 and a reinstatement fee of $25 for which payment was required by April 4. The rejection on the ground that the tender did not include the reinstatement fee was gratuitous for no such demand was made in the letter of March 13.

Under the IAM constitution a three months dues delinquency results in the automatic cancellation of membership [37] and to regain union membership a reinstatement fee must be paid. Although the collective bargaining agreement mentions reinstatement fees in its definition of dues, it does not specify when they are to be imposed. The District Court assumed that the IAM constitutional provision for a reinstatement fee was validly incorporated into the collective bargaining agreement by the "oblique reference" to such fees, and reasoned that this constitutional provision must be read in conjunction with the collective bargaining agreement which is the governing document under section 2 (Eleventh). On this approach the District Court found that the collective agreement postpones a delinquency until the end of the following calendar month. It therefore concluded

condition shall not apply * * * with respect to any employee to whom membership is denied or terminated for any reason other than the failure of the employee to tender the dues uniformly required of other members of his classification (and at his point on the Company's system) as a condition of acquiring or retaining membership.

"For the purpose of this Article, 'membership in good standing in the Union' shall consist of the payment by the employee of dues for each calendar month, not later than the last day of the following calendar month, which are uniformly required of members of his classification (and at his point on the Company's system) as a condition of acquiring or retaining membership."

* * * * *

"(e) When an employee becomes delinquent by not meeting the requirements of (a) above for 'membership in good standing in the Union', the following procedure shall be observed:

"(1) The General Chairman of the Union shall notify the employee by registered letter, return receipt requested, copy to the Company's Vice President of Industrial Relations, that the employee is delinquent in the payment of dues as specified herein and accordingly is subject to discharge as an employee of the Company. Such letter shall also notify the employee that he must make

the required payment to the Financial Secretary of the Union's local lodge with jurisdiction at the location where he works within fifteen (15) calendar days of the date of mailing of the notice or be subject to discharge under the terms of the Agreement."

* * * * *

"(n) Whenever the term dues is referred to in this Article, such use of the word 'dues' shall include initiation or reinstatement fees, periodic dues, and assessments (not including fines and penalties), * * *."

36. Mr. Brady's tender of $10.50 was intended to cover three months dues, as explained in footnote 5, supra.

37. Article E of the IAM constitution reads in pertinent part:

"Sec. 14. Delinquency for 3 months in the payment of dues or assessments shall automatically cancel membership and all rights, privileges and benefits incident thereto. The period of good standing membership of members whose membership has been cancelled for delinquency, or other cause shall date from their last reinstatement, as shown by the G.L. records, and their rights, privileges and benefits under the provisions of this Constitution shall attach and date from their last reinstatement, as though they had never before held membership in the I.A.M."

that the three months delinquency did not occur until after March 31 and IAM could not properly impose a reinstatement fee, as it did, in its letter of March 28.

The basis for the District Court's reconciliation of the two documents was its view that the policy underlying section 2 (Eleventh), which validates a union security provision when incorporated into an "agreement", is to insure that employees will have adequate notice of their union security obligations and may rely on the provisions of the agreement rather than resort to ad hoc correspondence from union officials to determine their rights and duties. In this regard the District Court commented:

"In the present case, however, the IAM's defense has been based almost exclusively upon letters sent to Brady which neither complied with the agreement nor were consistent with each other. There is no reason whatsoever why TWA and the IAM cannot incorporate clear union security provisions into their agreement which give adequate notice to the affected employees of the obligations imposed. Nor is there any reason why, having written such provisions into the agreements, they cannot apply them uniformly and comply with the requirements themselves. There is every reason why, however, they should not be allowed to discharge employees when they have failed to do these things. In the present case, the agreement is relatively clear, but IAM's rejection of Brady's March 27th tender did not comply with it and was utterly inconsistent with any obligations of which Brady had proper notice." [38]

Having concluded that Mr. Brady's tender of $10.50 on March 27 was "sufficient to cover 'the periodic dues * * * uniformly required * * *,' " and that no reinstatement fee could then have been imposed, the District Court held that the "discharge is not protected by 2 (Eleventh). It is, therefore, viola-

tive of 2 (Fourth)." [39] Liability was found to run against both IAM and TWA.

The foregoing views of the District Court are challenged by IAM and TWA principally on the ground that IAM's standard for "delinquency" was confused with the collective agreement's definition of "membership in good standing." Delinquency, they say, occurs when a member has not paid his dues for a calendar month by the last day of the following calendar month. Applying these standards to the present case, they conclude that because Mr. Brady had not paid his December, January and February dues he was delinquent for those three months on March 1. Accordingly his union membership, under the IAM constitution, was automatically cancelled. To regain his union membership he was required to pay a reinstatement fee. Failing to do so he was subject to discharge by TWA. Also, it is asserted that because Mr. Brady had not paid his December dues by January 31, he was no longer a member in good standing in IAM and was dischargeable under the terms of the collective bargaining agreement. In either case, they insist, IAM was justified in certifying Mr. Brady for discharge, and TWA was justified in discharging him.

We agree with the District Court's view that section 2 (Eleventh) makes the collective agreement the governing document and with the District Court's reconciliation of IAM's constitution with the agreement. The argument advanced by IAM and TWA is not persuasive and there are good reasons for rejecting it.

Even if the definition of "delinquency" which they propose is adopted, IAM was still unjustified in demanding the payment of four months dues by March 28. Mr. Brady would not have become delinquent for March dues until after March 31. Thus, when he tendered $10.50 on March 27, it was more than sufficient to cover the dues delinquencies for the three months for which he was then in arrears. IAM admits that its letter of March 13 was erroneous in de-

38. 223 F.Supp. at 369.

39. Ibid.

manding the payment of four months dues by March 28 and that its letter of March 28 was again erroneous in demanding the payment of three months dues together with a reinstatement fee by April 4. It insists, however, that it "wiped the slate clean" on April 11 when it demanded only a reinstatement fee. This argument fails because while it attempts to explain away IAM's ineptness, it attempts also to "wipe the slate clean" of Mr. Brady's valid tender of dues sufficient to cover all past dues delinquencies. Mr. Brady's valid tender of dues made before IAM's certification for discharge under the union security clause precluded further discharge action against him.[40]

We are cognizant of the wholesome precepts which hold that healthy industrial relations cannot be preserved if unions are prevented from effective action to secure the prompt payment of dues where dues are required under a valid union security agreement and that a necessary concomitant of such effective action by a union is the responsibility of the employee that his dues are paid promptly when due.[41] We do not intend to undercut these well stated pronouncements. But a delicate balance must be maintained between the union's right to preserve its own institutional existence and its sensitive obligations for fair dealing to its members under circumstances as are presented in this case. Mr. Brady cannot be characterized as the ordinary "free rider" absorbing union benefits without bearing a share in their costs. Rather he was a shop steward and had paid his dues until he challenged the manner in which they had been increased. While recalcitrant in accepting the new scale he ultimately relented and made a tender of all past delinquencies prior to any demand by IAM upon TWA to discharge him.

However irritating IAM may have considered Mr. Brady's resistance to the relatively insignificant increase in the monthly dues, it still was his representative, clothed with the great power of separating him from his livelihood but also owing him the maximum of good faith and fair dealing. This imposed on it the obligation to inform him of his rights and duties so that he could take all necessary steps to protect his job.[42] If IAM seriously regarded Mr. Brady's membership as exposed to cancellation with consequent discharge on March 1, its fiduciary relationship with him compelled no less than an intimation to this effect instead of the erroneous demand of March 13 for four months dues by March 28. His response thereto on March 27 in the form of payment in excess of three months dues was sufficient to restore him to good standing. That offer preceded the next erroneous demand of IAM for three months dues plus the first requirement to pay a reinstatement fee clearly indicating that IAM had indeed declared his membership automatically cancelled. The attempt to strike down the validity of his tender was totally inconsistent with the duty which IAM owed to Mr. Brady. When it chose not to accept the tender but elected to stand upon a precise enforcement of the automatic

40. Compare International Union of Electrical, etc., Wkrs., AFL–CIO Frigidaire Local 81 v. NLRB, 113 U.S.App.D.C. 342, 307 F.2d 679, cert. denied, 371 U.S. 936, 83 S.Ct. 307, 9 L.Ed.2d 270 (1962) and NLRB v. Aluminum Wkrs. Int'l Union, 230 F.2d 515 (7 Cir. 1956), where a valid tender made before the union's certification was a barrier to the employee's discharge, *with* Producers Transport, Inc. v. NLRB, 284 F.2d 438 (7 Cir. 1960); NLRB v. Technicolor Motion Pictures Corp., 248 F.2d 348 (9 Cir. 1957) and International Ass'n of Mach., etc. v. NLRB, 247 F.2d 414 (2 Cir. 1957), where the union's right to demand an employee's discharge was not barred by a belated tender of dues, made after the union's demand for discharge.

41. See Producers Transport, Inc. v. NLRB, 284 F.2d 438 (7 Cir. 1960); NLRB v. Technicolor Motion Pictures Corp., 248 F. 2d 348 (9 Cir. 1957).

42. NLRB v. Hotel Employees Union, 113 U.S.App.D.C. 342, 320 F.2d 254 (3 Cir. 1963; International Union v. Electrical, R. & M. Wkrs., AFL–CIO, Frigidaire Local 81 v. NLRB, 307 F.2d 679, 683 (1962).

membership cancellation provision it erred, for the tender was timely to prevent rigid and severe enforcement of that provision.

■ The argument that after January 31, Mr. Brady was no longer a member in good standing of IAM and thus was dischargeable is also untenable. The collective bargaining agreement specifically sets forth procedural requirements which shall be observed when discharge is sought under the union security provisions.[43] IAM's failure to comply with them until after Mr. Brady had tendered dues sufficient to make him current also bars application of these provisions to him.

In the light of the foregoing we conclude, as did the District Court, that Mr. Brady's dues tender of March 27 was valid. Consequently IAM's certification to TWA was improper and his discharge by TWA violated section 2 (Fourth) (Eleventh) of the Railway Labor Act.

## III

■ A. TWA challenges the District Court's conclusion that it is liable to Mr. Brady. Section 2 (Fourth) states, in part: "it shall be unlawful for any carrier * * * to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization * * *."[44] TWA insists that to constitute a violation of this section it must be established, as it must be under section 8(a) (3) of the National Labor Relations Act, as amended, that the employer has "reasonable grounds for believing"[45] that union membership was denied or terminated for reasons other than the failure of the employee to tender periodic dues uniformly required. The argument continues with the assertion that the District Court held the discharge of Mr. Brady not protected by section 2 (Eleventh) and therefore

violative of section 2 (Fourth) on one basis—that IAM rejected Mr. Brady's dues tender although it was timely and sufficient to cover periodic dues uniformly required. TWA asserts that the District Court made no findings that it was guilty of wrongdoing, and without such findings, TWA cannot be held liable for discharging Mr. Brady after IAM certified that he had not complied with the union security provisions of the collective bargaining agreement.

To adopt TWA's view, would require the court to read the intent standard of section 8(a) (3) of the National Labor Relations Act into section 2 (Fourth) (Eleventh) where no such standard was supplied by Congress. The District Court properly declined to do so. It concluded that after the employee established that his rights under the statute had been violated, the employer would be held liable. The Court of Appeals for the Second Circuit, in Cunningham v. Erie R.R.[46] adopted and approvingly cited the District Court's opinion and stated:

"Once it is established, as here, that the expulsion of the worker from membership in the Union was * * * 'for any reason other than the failure of the employee to tender the periodic dues * * * *uniformly required* as a condition of acquiring or retaining membership,' * * * (emphasis added), the Railroad, having discharged the employee on the representation of the Union that he had failed to tender such periodic dues, uniformly required, is automatically liable for wrongful discharge. See Brady v. Trans World Airlines, D.C.Del., 1963, 223 F.Supp. 361. This is because the limited protection afforded by the Railway Labor Act is no longer available as a defense."

The Second Circuit explained that it is probably because of this *automatic liability* that collective bargaining agree-

43. See note 35, supra.

44. 45 U.S.C. § 152 (Fourth).

45. 29 U.S.C. § 158(a) (3).

46. 358 F.2d 640, 645 (2 Cir. 1966). See generally Note, 76 Yale L.J. 210 (1966).

ments in the industry provide for indemnification of the employer by the union for all liability arising from an unlawful union security discharge.[47] Like the District Court and the Second Circuit, this court concludes that the employer's liability is automatic, once it is established that the discharged employee's section 2 (Fourth) (Eleventh) statutory rights have been violated.

■ Aside from this conclusion regarding the employer's liability under the Railway Labor Act, there is evidence in the record warranting TWA's liability under the more demanding standard which it advances. In Radio Officers' Union v. NLRB,[48] the Supreme Court examined section 8(a) (3) of the National Labor Relations Act and discussed the proof of motive required to establish a violation of that section. It stated:

> "But it is also clear that specific evidence of intent to encourage or discourage [union membership] is not an indispensable element of proof of violation of § 8(a) (3). * * * This recognition that specific proof of intent is unnecessary where employer conduct inherently encourages or discourages union membership is but an application of the common-law rule that a man is held to intend the foreseeable consequences of his conduct. * * * Thus an employer's protestation that he did not intend to encourage or discourage must be unavailing where a natural consequence of his action was such encouragement or discouragement. *Concluding that encouragement or discouragement will result, it is presumed that he intended such consequence.* In such circumstances intent to encourage is sufficiently established." [49]

While the *Radio Officers'* case did not deal with a discharge resulting from a union's certification that the employee failed to comply with its dues requirements, the facts of that case and the context from which the above language was taken, make the rule set forth therein applicable here. A discharge under a union security clause for failure to comply with the union's dues demands *inherently* encourages other employees to promptly comply with union "membership" requirements. In such circumstances, if the discharge is improper the employer will necessarily have discriminated against the employee and it will be *presumed* that the employer intended the foreseeable consequence of his act, that is, the encouragement of union membership.

■ In the instant case there is no finding that TWA rebutted the above stated presumption, nor does an examination of the record lead to that conclusion. On the contrary, the record discloses that immediately after he learned that his dues tender of March 27 would be rejected, Mr. Brady explained his dues dispute to the TWA General Foreman. Mr. Brady was simply advised to pay what the union demanded; later he was advised that the matter was merely one between him and IAM and that TWA was not involved. The record also indicates that TWA had copies of IAM's various letters to Mr. Brady which revealed the inconsistent positions taken by IAM. On these facts, it would be difficult to conclude that TWA overcame the presumption that it intended the foreseeable consequences of its act. Thus, the District Court's conclusion that TWA is liable to Mr. Brady for its violation of section 2 (Fourth) (Eleventh) is further fortified.

47. Article XXVI(p) of the TWA-IAM collective bargaining agreement provides: "The Union shall indemnify and save the Company harmless against all forms of liability that shall arise out of or by reason of action taken by the Company, which action was requested by the Union under the provisions of this Article (Union Security)." (Parenthesis supplied.)

48. 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1954).

49. Id. at 44–45, 74 S.Ct. at 338. (Emphasis added.)

■ B. Having concluded that Mr. Brady's rights under the Railway Labor Act had been violated, a further question which then faced the District Court was whether the IAM should be held jointly liable with TWA for causing the wrongful discharge. Section 2 (Fourth) was designed to prevent employers from coercing employees with regard to their relationships with the unions. That section does not expressly refer to labor organizations, but section 2 (Eleventh) speaks in terms of the "agreement" which the employer and the labor organization may formulate. The District Court justifiably reasoned that since both the employer and the union were treated alike in section 2 (Eleventh), and that section is an exception to the anticoercion provisions of section 2 (Fourth), Congress contemplated that unions would also be held liable for causing a discharge in violation of section 2 (Fourth) (Eleventh).

That Congress intended labor organizations should be held accountable for violations of section 2 (Fourth) (Eleventh) is no more than rational. Generally, in dues disputes, it is the union which instigates the discharge, and an illegal application of the union security provisions can scarcely be originated by any other source than the union. Just as in hostile discrimination actions against the union where the employer has been declared a proper party defendant,[50] in suits involving section 2 (Fourth) (Eleventh) unions should be held liable for their actions in procuring a discharge which violates the employees statutory rights.[51]

■ Still with regard to the liability of IAM, brief mention should be made

of its argument that the District Court erred in not granting judgment to it because of Mr. Brady's failure to exhaust his internal union remedies. The District Court correctly reasoned that this section 2 (Fourth) (Eleventh) phase of the case involves the legality of Mr. Brady's discharge from his employment and not the legality of IAM's dues increase. The doctrine, relied on by IAM, applies to situations unlike the present one, which concern wholly internal union matters. The present dispute focuses on the employment relationship, rather than the union relationship. Furthermore, Mr. Brady is seeking reinstatement in his employment, a remedy that is unavailable to him within the internal union procedures. These reasons justified the District Court in determining that Mr. Brady was not required to exhaust his internal union remedies before bringing suit against IAM for violation of section 2 (Fourth) (Eleventh).

C. After holding that Mr. Brady's statutory rights had been violated and that as a result liability runs against both TWA and IAM, the District Court considered the remedies available to Mr. Brady. It concluded that appropriate for such a violation were reinstatement in his employment with back pay and reinstatement as a member in good standing in IAM.[52]

■ It is argued that the District Court was without authority to order Mr. Brady reinstated in his employment, and that in so doing the District Court departed from the rules established in several Supreme Court cases.[53] These cases are relied on for the proposition that an employee aggrieved by his discharge has alternative remedies: (1) if

---

50. See note 23, supra, and accompanying text.

51. That IAM should be held liable for its actions in causing a violation of section 2 (Fourth) (Eleventh) is all the more justified in the instant case since IAM is required to indemnify TWA for any liability imposed on it as a result of IAM's improper application of the union security provisions. See note 47, supra.

52. The District Court discussed remedies at 244 F.Supp. 820 and in its unreported

opinion at Civil No. 1884 (D.Del., filed September 6, 1966).

53. Walker v. Southern Ry., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966); Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L. Ed. 1325 (1953); Slocum v. Delaware, L. & W. R. R., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Moore v. Illinois Central R.R., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941).

he wishes to retain his employment, he must pursue his remedy under the administrative procedures established by the applicable collective bargaining agreement subject to the Railway Labor Act and his right of review before the System Board of Adjustment; (2) if he accepts his discharge as final he may bring an appropriate action at law seeking money damages. In none of these cases was an employee discharged under a union security provision, and in each of these cases it was assumed that the adjustment board would have jurisdiction to hear the cause if the employee sought reinstatement before it. In part I above, it was held that the Board was without jurisdiction to entertain Mr. Brady's complaint which was directed against both TWA and IAM. Under these circumstances, when procedures for reinstatement are otherwise unavailable to him, the purposes of the Railway Labor Act would best be served if an employee seeking to regain his job may invoke the equitable powers of the court. We agree with the District Court that reinstatement, in the present case, was an appropriate remedy and that it had authority to so order.

The District Court implemented the reinstatement by requiring TWA to secure, without cost to Mr. Brady, such additional training and schooling as would be necessary for his reemployment in a position substantially equivalent to that which he would have attained had he not been discharged. TWA vehemently objected because of the excessive cost of such a training program for Mr. Brady in light of the vast changes occuring in the airline industry during the interruption in his service. However, the District Court considered all the factors involved and properly concluded that al-

though some hardship would be imposed on TWA, it should not bar Mr. Brady's restoration as an adequate aircraft mechanic. In requiring Mr. Brady's reinstatement, the District Court also correctly ruled that he was entitled to the fringe benefits he would have had if he had not been discharged.[54]

The back pay award of $10,617.80 was computed by subtracting from the amount Mr. Brady would have earned from TWA if he had not been illegally discharged, the amount he actually earned following his discharge. The arguments advanced against this award and the manner in which it was computed are without merit.

### IV

The District Court took the position that whether Mr. Brady established his claim for hostile discrimination or his claim for violation of his express statutory rights under section 2 (Fourth) (Eleventh) his remedy would be the same. On this premise it declined to rule on the hostile discrimination claim once it was satisfied that a violation of section 2 (Fourth) (Eleventh) had been proved. We agree that Mr. Brady was not entitled to recovery on his hostile discrimination claim, but we arrive at this result for reasons which differ from those of the District Court.

The complaint and its amendments are artlessly drawn and the prayers for relief are, to say the least, confusing. However, the District Court, with commendable liberality, interpreted them as raising two separate claims. The first, alleging violation of section 2 (Fourth) (Eleventh), which has been discussed at length, was directed at both TWA and IAM. This claim involved the legality of Mr. Brady's discharge from his em-

54. Specifically the District Court ordered TWA to secure, without cost to Mr. Brady, his membership in the following Group Plans: Life Insurance Hospital, and Health and Accident or the equivalents thereof. Membership in the Retirement Fund was also ordered with all payments due thereunder to be made by TWA, to be paid by it, and all payments due by Mr. Brady, to be paid by him. The District Court properly declined to award Mr. Brady any damages for the loss of the value of airline passes to which he would have been entitled had he continued to work for TWA on the ground that he had not introduced sufficient evidence on which such an award could be based.

ployment. The second, alleging hostile discrimination in violation of its duty of fair representation, was directed at IAM. In so far as the first claim is concerned, we have agreed with the District Court that because it involved the propriety of the discharge, and thus the employment relationship, Mr. Brady was not required to exhaust his internal union remedies. With regard to the claim for hostile discrimination, the opposite conclusion is dictated.

■ In a suit alleging hostile discrimination violative of the bargaining representative's duty of fair representation, it must be proved not only that the union's actions were improper, but that they were undertaken with malice and bad faith.[55] Mr. Brady alleges that he was accorded different treatment from other members of his lodge who were similarly delinquent in their dues payments and also that at the hearing before the Board, Mr. Miller, an IAM official, misrepresented pertinent facts. In making these allegations, Mr. Brady is not challenging his discharge from his employment, but rather the fairness and propriety of the manner in which he was treated by IAM. Such a claim involves the union-member relationship and not the employer-employee relationship.

■ It has been the general rule, and the rule of this circuit, that before a suit against a union for breach of its duty of fair representation may be brought in

the courts, the member must first exhaust the available internal union remedies, or show an adequate reason for failing to do so.[56] There is good reason for this rule which forestalls judicial interference with the internal affairs of a labor organization until it has had at least some opportunity to resolve disputes concerning its own legitimate affairs. Mr. Brady was a shop steward and that he was knowledgeable of appellate union procedures may be inferred from his letter in February 1956 to the International President of IAM and others in which he protested the manner in which the dues of his local lodge were increased. Nevertheless, there is no allegation or evidence that he invoked any appellate union procedures to redress the asserted unfair and arbitrary action against him by the local and district officers. Nor does he advance an adequate reason for his failure to do so. Mr. Brady's argument that it would have been futile to ask IAM to review its own dealings with him is not tenable for IAM's internal procedure provided reasonably prompt review of his contentions on union levels higher than those responsible for the decisions against him.[57]

It is conceivable that an award of damages by a court against a union for hostile discrimination could supplement the relief available for a violation of section 2 (Fourth) (Eleventh). However, in this case, Mr. Brady's claim for such damages may not be sustained because

---

55. Vaca v. Sipes, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); Cunningham v. Erie R.R., 266 F.2d 411, 417 (2 Cir. 1959).

56. Gainey v. Brotherhood of Railway & Steamship Clerks, 275 F.2d 342, 345 (3 Cir.), cert. denied, 363 U.S. 811, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960), and 313 F. 2d 318 (3 Cir. 1963); see. e. g., Foy v. Norfolk & W. Ry., 377 F.2d 243, 246 (4 Cir. 1967); Neal v. System Board of Adjustment, 348 F.2d 722, (8 Cir. 1965); Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2 Cir.), cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388

(1961). See the following proviso contained in the Bill of Rights of the Members of Labor Organizations, 29 U.S.C. § 411(a) (4):

"Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof."

57. See International Ass'n of Machinists v. Friedman, 102 U.S.App.D.C. 282, 252 F.2d 846, cert. denied. 357 U.S. 926, 78 S.Ct. 1370, 2 L.Ed.2d 1370 (1958), where the court reviewed the internal appellate procedures of IAM and deemed them fair and adequate.

of his failure to exhaust internal union remedies or to adequately explain that failure. Having reached this conclusion, it is obviously unnecessary to consider Mr. Brady's demand for a jury trial on his claim for hostile discrimination and the propriety of the particular damages sought thereunder.[58]

Mr. Brady's successive attorneys before the District Court declined to press for the allowance of fees to them and his appeal from the denial thereof is baseless. His request for similar fees on this appeal is also without merit.

For the foregoing reasons, the orders of the District Court from which Vincent P. Brady has appealed at No. 16,266 and those from which Trans World Airlines, Inc. and The International Association of Machinists have respectively appealed at Nos. 16267 and 16268 will all be affirmed.

Each of the parties to these respective appeals will bear his own costs.

---

58. Mr. Brady demanded punitive damages against IAM and compensatory damages for mental anguish arising from the humiliation and embarrassment he suffered. By a belated application which was denied by the District Court, Mr. Brady moved to further amend his complaint to join his wife who sought damages for loss of his consortium.